FRANK W. FARNHAM *vs.* JESSE G. JONES and others.

April 2, 1884.

New Trial—Surprise—Erroneous Certified Copy of Record of Court.
Where an original record was lost, and the defeated party was misled by a certified copy used on the trial, which was subsequently discovered not to conform to the original in important particulars, but the correctness of which he had no reasonable ground for disputing at the time, *held*, a proper case of legal surprise, for which a new trial might properly be granted by the trial court, unless it was apparent from the record that the mistake or errors complained of would not affect the result.

Tax Sales—Right to Surplus Proceeds—Must be sold separately.—
Upon a sale of land for taxes, under chapter 135, Laws 1881, the landowner was entitled to recover any surplus remaining after the amount

charged against the land was satisfied. Hence, the requirement of the statute that each piece or parcel should be sold separately was important and material to the interest of the land-owner, as well as to the state.

**Same—Certificate held to show an Invalid Sale of Distinct Tracts as one Parcel, and not Evidence of Title.**—Where it affirmatively appeared, upon the face of a certificate of sale issued to a purchaser under the provisions of this act, that many distinct tracts and parcels of land separately situated were grouped together and sold *en masse,* in one general sale, as one "piece or parcel of land," *held,* that such certificate on its face disclosed an invalid sale, and was not *prima facie* evidence of title.

**Same—Statute of Limitations.**—The limitation clause in section 7 of the act has no application to such a case.

Plaintiff, claiming to be the owner of certain land in Cass county, brought this action in the district court for the counties of Crow Wing, Cass, Itasca and Aitkin, to recover the value of 2,160,000 feet of pine timber cut and taken away from such land by the defendants. The defendant Jones admitted the cutting and taking away of the timber, and pleaded title in himself to both the land and timber.

On the trial, before *Stearns,* J., a jury having been waived, it appeared that the plaintiff's title rested solely upon a tax sale made in September, 1881, for taxes delinquent in and prior to 1879, the validity of which was the main question in controversy. As *prima facie* evidence of title, the plaintiff was allowed to introduce in evidence, against defendants' objection, the certificate of tax sale, which was in the following form, (numerals being here substituted for words:)

"I, F. B. Thompson, auditor of the county of Crow Wing, do hereby certify that at the sale of forfeited lands pursuant to real estate tax judgment entered in the district court in the county of Crow Wing, on the 20th day of August, 1881, in proceedings to enforce payment of taxes upon real estate delinquent in the year 1879 and prior years, for the county of Cass, which sale was held at Brainerd, in said county of Crow Wing, on the 29th day of September, the following described piece or parcel of land, situate in said county of Cass, state of Minnesota, to wit: (then follow descriptions of government subdivisions of land in divers sections and townships,) containing 6741.53

acres, more or less, was offered for sale to the highest bidder, and at said sale I did sell the said piece or parcel of land to J. A. Davis, for the sum of $219.29, that being the highest sum bid therefor; and he having paid said sum, I do therefore, in consideration thereof, and pursuant to the statute in such case made and provided, convey the said pieces or parcels of land, in fee simple, to said J. A. Davis, his heirs and assigns forever.

"Witness my hand and official seal, this 29th day of November, 1881. F. B. THOMPSON,

"County Auditor."

It was admitted on the trial that the original real-estate tax-judgment book upon which the sale was made for which the above certificate was given, was lost and could not be found, and the certified copy of such real-estate tax-judgment book in the auditor's office was introduced by defendants to show the invalidity of plaintiff's tax title. From this copy of the judgment book it appeared that, except on the last page, the name of the county in all places was left entirely blank, and nowhere was any county mentioned for the taxes in which the judgment was rendered, excepting only on the last page; that none of the pages of the book were signed by the clerk of the district court, except the last page, and that the land in question was not described on the last page but in about the middle of the book. This copy of the judgment also showed upon its face that it was for the taxes, interest and penalties delinquent for 1879 and prior years and also for 1880, without in any manner separating the taxes for 1879 and prior years from the taxes for 1880.

The court thereupon ordered judgment for the defendants, for the reason that it appeared from the certified copy that no tax judgment was ever entered against the land, and therefore the plaintiff never acquired any title thereto.

The plaintiff, upon a settled case and affidavits showing that the certified copy of the tax judgment was not in fact a correct copy of the original, moved for a new trial, on the ground of surprise. The motion was granted, and the defendants appealed.

*Babcock & Davis* and *Fred. Hooker,* for appellants.

*Chas. D. Kerr* and *Geo. W. Holland,* for respondent.

VANDERBURGH, J. The plaintiff, claiming title to the lands in controversy, brings trespass for the value of pine timber cut and taken away by the defendants from the same during the winter of 1882. The defendant Jones is admitted to be the owner of the land (320 acres) described in the complaint, unless the plaintiff has acquired title thereto by assignment from the purchaser upon an alleged sale thereof for delinquent taxes, in pursuance of the provisions of chapter 135, Laws 1881, "to enforce the payment of taxes which became delinquent in and prior to 1879." At the trial the court ordered judgment for the defendants on the ground of fatal jurisdictional defects apparent upon the record. The original tax-judgment book had been lost, and by consent the certified copy filed with the county auditor was admitted in evidence. The plaintiff afterwards applied for a new trial, which was granted upon the ground of surprise.

We think a proper case was made therefor upon the affidavits on which the motion was made, by which it is made to appear that the copy of the judgment introduced in evidence was not in fact a correct transcript of the original as respects the particular errors and omissions which the court deemed material at the trial, and which fact was not known or discovered by plaintiff or his counsel until subsequent to the trial. The clerk, who had been custodian of the lost record, and who appears to be a material witness for plaintiff on the subject, was sick and unable to be present at the trial, and the original record had been lost several months previous. We think the facts alleged—which must be taken as established for the purposes of the motion—that the record as filed with the auditor has, since the trial, been discovered not to be a correct copy of the original, and that plaintiff had no reason to doubt the accuracy of the official certificate, and no apparent means at hand at the trial to detect its inaccuracy, and that he was in fact misled thereby, constitute a case of legal surprise. That plaintiff failed to ask for a continuance at the trial, under the circumstances, certainly shows no want of ordinary prudence. *Nudd* v. *Home Ins. Co.,* 25 Minn. 101. The order granting a new trial should therefore be affirmed, unless it is apparent from the record, which contains the pleadings, evidence, and proceedings

upon the trial, that a new trial must necessarily lead to the same result.

The act of 1881 was not intended to provide for a sale and disposition of lands legally forfeited to and already the property of the state, but to enforce the payment of taxes which became delinquent in and prior to 1879, and which remained unpaid, and whether the sales or forfeitures previously made on account thereof were valid or not. The object of the statute was to enforce their collection and payment by a sale which should divest the title of land-owners, and evidently proceeded upon the theory that owners had rights and interests remaining which it was intended to recognize and protect, notwithstanding the stringent provisions of the act. *Knudson* v. *Curley*, 30 Minn. 433. Section 4 provides that the sale should be made by the auditor at his office immediately following the regular delinquent tax sale in September; that he should sell each piece or parcel separately, at public vendue, *in the order and by the description contained in the judgment book;* and that he should first offer each piece or parcel to the highest bidder therefor, but if no bidder should offer to pay the amount due, or *more,* he should offer the same to the bidder who would pay the highest sum less, etc. · The sale was to be absolute and without redemption. Parties owning or having any interest in the lands offered would be entitled to have the sale so conducted as to secure the highest price. And we think the proceeds of the sale, after satisfying the amount due thereon, such owners would have a right to demand and recover. After the lien of the state is satisfied, any surplus realized from the sale must revert to the owner. The statute does not assume to condemn the property in the land beyond the amount due, with interest and costs. Its purpose and aim are to collect the revenue, and, when this is accomplished and a sale made, the proceeds stand in the place of the property as respects the land-owner's rights, and so much only can be applied to the indebtedness charged against the land as will satisfy it, with the expenses of sale; and the claim of the land-owner to the balance remains unimpaired, as in the case of ordinary judicial sales. Waples on Proceedings in Rem, § 233; Herman on Executions, 456.

It is true, the act in question contains no provisions in respect to

the disposition of the surplus proceeds of the sale. But this is immaterial; the right to the surplus exists independently of such statutory provision, the province of which would be merely to regulate the manner of enforcing the right. In practice, however, the ordinary legal remedies, by application on motion to the court in which the judgment is entered, or by action, are sufficient for such purpose.

The provisions of this act, therefore, that the lands should be sold in distinct parcels, were important to the land-owner as well as the state. A sale of several distinct parcels, *en masse*, would naturally tend to discourage competition in bidding, and, where they belong to different owners, would greatly embarrass, if not defeat, a proper distribution of the surplus, if any. This requirement of the statute is a rule binding upon the auditor as to the manner in which the sale is to be made, and was doubtless intended for the benefit of the land-owner. Its construction is not affected by the fact that from the circumstances of particular cases its enforcement is deemed unimportant. Cooley on Taxation, *280.

The act in question provides, also, for the issuance of a certificate, to be substantially in the statute form given, and that "such certificate shall pass to the purchaser the estate therein described. * * * If any purchaser shall purchase at said sale more than one piece or parcel of land, all the pieces or parcels so purchased may be included in the same certificate." This must be construed, however, as referring to separate sales to the same purchaser, as the statute provides. The certificate authorized by the act is also made *prima facie* evidence of title.

In the case at bar the plaintiff's title and cause of action rest solely upon a certificate of the county auditor issued to his assignor upon a delinquent tax sale purporting to have been made, under this act, on September 29, 1881, and which is claimed to be sufficient *prima facie* evidence of title in fee to the lands embraced therein. This certificate includes, however, not only the lands in controversy, alleged by defendant Jones to belong to him, but also a large number of other separate and distinct parcels, situated in different sections in a large number of different government townships in the county of Cass. It further appears upon the face of the certificate that these lands, con-

sisting of over 6,000 acres, were sold *en masse* to the purchaser as one tract or body of land. The certificates recites that "the following piece or parcel of land, situated in said county of Cass, state of Minnesota, to wit, [then follow descriptions of government subdivisions in divers sections and townships,] containing 6,741.53 acres, more or less, was offered for sale to the highest bidder, and at said sale I did sell the said piece or parcel of land to J. A. Davis for the sum of $219.29, that being the highest sum bid therefor. * * *"

A body of land composed of several government subdivisions or descriptions may in fact constitute but one tract or parcel. As defined in the general tax law, (Gen. St. 1878, *c.* 11, § 4,) "any contiguous quantity of land in the possession of, owned by, or recorded as the property of the same claimant, person, or company," may be considered as constituting one lot, piece, or parcel, as used in the statute; and it is the general rule that where several government subdivisions of land or village lots owned by the same person adjoin, and are so connected together and occupied as to constitute one parcel of land in fact, they may ordinarily be treated as one tract or parcel for the purposes of assessment and sale. *Hall* v. *Dodge,* 18 Kan. 277; *Weaver* v. *Grant,* 39 Iowa, 294. But here, as the certificate shows, a great number of distinct tracts and parcels, many of them miles apart from each other, the property, it may be, of many different owners, and of which but a small part (21 forties) appear to belong to defendant. Jones, were sold, not as entered and described in the judgment book, and presumptively not as listed and assessed, but grouped together in one general sale for a single gross sum. Such a sale was unauthorized and invalid, and a certificate showing such a sale is invalid, and is not such a certificate as the statute intended to make *prima facie* evidence of a valid legal title in the holder, and lapse of time could not make it so. The limitation clause in section 7, therefore, has no application to such a case. *Hall* v. *Dodge, supra; Shoat* v. *Walker,* 6 Kan. 65, 73, 74; *Walker* v. *Moore,* 2 Dill. 256; *Woodburn* v. *Wireman,* 27 Pa. St. 18; *Pack* v. *Crawford,* 29 Ark. 489; *Montgomery* v. *Birge,* 31 Ark. 491; *Keene* v. *Barnes,* 29 Mo. 377; *Hayden* v. *Foster,* 13 Pick. 492; *Moore* v. *Brown,* 11 How. 414; *Sheehy* v. *Hinds,* 27 Minn. 259; Blackwell on Tax Titles, *281, 282.

This construction necessarily disposes of the case without another trial, since, if the certificate is no evidence of title in plaintiff's assignor at the time of the alleged trespass, this action for damages must necessarily fail.

Order reversed.