JAMES MULVEY and another *vs.* DAVID TOZER.

April 23, 1889.

**Tax Sale of Forfeited Lands—Act of 1881.**—By Laws 1881, *c.* 135, § 2, the provisions of sections 83 and 86 of the general tax law (except so far as expressly modified by other sections of the act) are made applicable to proceedings under that act.

**Same—Prerequisites to Valid Title.**—To enable the state to give any valid title under this act, the land must have been offered at the tax sale, and bid off for the state, and this must appear from entries in the tax-judgment book, as required by section 86 of the general tax law.

Action brought in the district court for Kanabec county, to determine defendant's adverse claim to vacant lands in that county. The defendant answered, alleging title in himself under the tax sale of forfeited lands in 1881, pursuant to Laws 1881, *c.* 135. The action was tried by *McCluer*, J., who found the following (among other) facts:

The original tax-judgment book on which the tax sale relied on by defendant was founded contains no entries on the right-hand page opposite any description of any lands, whether those described in the complaint or others; but throughout the whole book the right-hand pages are blank. The copy of the tax judgment has no entries on the right-hand page opposite any of the descriptions of the lands in question showing what disposition was made of such lands at the time of any tax sale on such judgment; but the copy does show that these lands were sold by the state to Warren Tuttle, (defendant's grantor,) as forfeited lands, on November 23, 1885. The court also found a failure to comply with the statute in various proceedings anterior to the judgment. Upon these facts the court held that sections 83, 86, and 101 of the general tax law (Gen. St. 1878, *c.* 11) applied to sales under Laws 1881, *c.* 135, and that as the record did not show that the lands in question were offered for sale, and a bidding-in by the state in default of other bidders, the state never acquired any title, and none passed by its private sale and its deed to

Tuttle. Judgment was ordered and entered for plaintiffs, and the defendant appealed.

*Clapp & Macartney*, for appellant.

*Searles & Gail*, for respondents.

MITCHELL, J. The defendant claims title under a tax-deed purporting to have been issued pursuant to the provisions of Laws 1881, *c.* 135, § 9. Its validity depends mainly upon the question what course of procedure was required by that statute in case of lands not sold at the public tax sale to actual purchasers. This act, as we have had occasion to hold, proceeds upon the theory that the state waived all rights under any prior sales or forfeitures, and, recognizing the owners as still having rights in the land, provides for the enforcement of delinquent taxes against them entirely new proceedings, upon which alone the state relies. *Farnham* v. *Jones*, 32 Minn. 7, (19 N. W. Rep. 83.) Hence a tax-deed issued under the act must rest solely upon the judgment rendered pursuant to it, and what was done or omitted to be done under it. *Gilfillan* v. *Chatterton*, 38 Minn. 335, (37 N. W. Rep. 583.) This act does not purport to be in itself a complete code of procedure, but adopts, in the main, that of the general tax law, (Gen. St. 1878, *c.* 11.) Section 2 adopts and incorporates into the act all the provisions of the general tax law as to advertisement, judgment, and sale of property for taxes. Standing alone, there can be no doubt, as defendant himself concedes, that this section makes applicable to proceedings under the act all the provisions of sections 83, 86, and 101, requiring, among other things, that every tract not sold at the tax sale to an actual purchaser shall be bid in for the state, and that immediately after the sale the county auditor shall set out in the copy judgment book, opposite the description of each tract, what disposition was made of it, whether sold to a purchaser or bid in for the state, and then deliver this book to the clerk of the court, who is to make the appropriate and corresponding entries opposite each description in the real-estate tax-judgment book. Of course, the provisions of section 83 are so far modified by the express provisions of sections 4 and 8 of the act of 1881 as to permit a tract to be sold at the tax sale for less than the amount of taxes, interest, and costs against it, but not for less than the amount

v.40м—25

of state tax. Inasmuch as the sale under the act of 1881 was without redemption, and consequently all tracts not sold to actual purchasers became immediately the property of the state, (assuming that all the requirements of the act were complied with,) it became necessary to make some changes in section 101 of the general tax law to fit the situation. Hence section 9 of the act provides that all tracts remaining unsold at such sale shall thereafter be stricken from the tax-lists, (instead of waiting two years as under the general tax law,) and shall be subsequently sold as provided by section 101 of that law.

Two arguments are advanced by defendant why the provisions of sections 83 and 86, and particularly the one requiring lands not sold to actual purchasers to be bid in for the state, were not intended to apply to sales under the act of 1881 :—*First*, that the act nowhere expressly requires any such thing; *second*, that the language of section 9, "that all pieces or parts of land remaining unsold at such sale shall be stricken from the tax-list," etc., implies that no bidding-in for the state was contemplated. The answer to the first of these suggestions is that there was no necessity for any such express provision. This was all covered by section 2, adopting generally all the provisions of the tax law as to sales. If there is anything in the suggestion, it would apply with equal force to all the other provisions of sections 83 and 86; for instance, those requiring the auditor and clerk to make entries showing what disposition was made of each tract at the sale. It was held in *Gilfillan* v. *Chatterton, supra,* that under the act of 1881 the state acquired no title by virtue of the judgment alone, and had no right to dispose of land under section 9, unless it had been offered for sale at the tax sale. As the deed itself showed that the land was never offered for sale, this was as far as was necessary to go in that case; but it is in point as determining that something else was necessary to vest title in the state besides the mere fact that the land was not sold to a purchaser at the tax sale. And it would certainly be anomalous if the law required no record to be kept of facts essential to vest title in the state, but left the whole matter dependent upon the veracity or memory of the auditor who made the sale, or upon the imagination or hearsay information of his

successor.   As to the second suggestion, in view of the evident purpose of section 9, already referred to, we think it clear that by the term "unsold," as there used, is meant "not sold to an actual purchaser," and that no inference can be drawn from it that it was not intended that tracts not thus sold should be "bid in for the state," which is never referred to in any of the tax laws as a sale, nor the state called a "purchaser."   Our conclusion, therefore, is that by virtue of section 2 of the act of 1881, the provisions of sections 83 and 86 of the general tax law are applicable to sales under that act, and that to enable the state to give any valid title under the act it must appear that the lands were duly offered for sale at the tax sale, and bid in for the state, and that this must appear from entries in the judgment-book, as required by the general tax law.   As remarked by the trial court, all the evils suggested by us in *Stewart* v. *Minn. & St. Louis Ry. Co.*, 36 Minn. 355, (31 N. W. Rep. 351,) would exist in an aggravated form under any other rule.

In the present case it affirmatively appears that no entries were ever made in either the copy or original tax-judgment book to show what disposition was made of these lands at the tax sale, — nothing to show that they were ever bid in for the state, or even offered for sale.   Without stopping to consider the effect of the recitals in the tax-deed, but assuming that they would be *prima facie* evidence of the facts recited, it is enough to say that, inasmuch as these recitals could not properly be predicated upon anything except the entries in the tax-judgment book, they are entirely rebutted by evidence that no such entries were ever made.

Judgment affirmed.