STATE OF MINNESOTA v. R. J. BALDWIN.[1]

Nov. 22, 1895.

Nos. 9813–9811–9812—(102–100–101).

Taxation — Proceedings on Delinquent Lists — Practice—Evidence—Interest.

Proceedings were commenced in January, 1887, to enforce delinquent taxes on certain real estate for the year 1885, together with those for certain prior years added thereto, in one given sum, without specifying the amount for each year. The landowner seasonably interposed an answer, denying that any taxes had been assessed for any year except for 1885. The register of actions kept by the clerk of the court contained an entry in the proceeding: "Cause tried July 23, 1888." In July, 1893, pursuant to Laws 1893, c. 150 (G. S. 1894, § 1579, note), there was filed a list of taxes delinquent for 1889 and prior years, which included the same tract, against which were charged taxes for the same years sought to be enforced in the former proceeding. This proceeding is still pending. The proceedings commenced in January, 1887, were brought on for trial in May, 1895, and judgment ordered against the land for the whole amount of taxes, penalties, and costs claimed against it, with interest on the same at one per cent. per month from March 21, 1887, the date on which judgment for delinquent taxes is required to be entered in case no answer is filed. Held:

(1) That the entry in the register of actions was of itself no evidence that the proceeding had been tried.

(2) That the time that had elapsed between the commencement of the proceedings and the time they were brought on for trial did not operate as a discontinuance, or entitle the landowner to a dismissal at the trial.

(3) The provisions of G. S. 1894, § 1586, as to the time when answers filed in tax proceedings shall be tried, are directory, and not mandatory.

(4) The commencement of proceedings in 1893 to enforce the collection of taxes for the same and other years against the same tract did not of itself operate as an abandonment or dismissal of the prior proceedings.

(5) Laws 1885, c. 2, § 23 (G. S. 1894, § 1631), being purely remedial, and merely giving a remedy to enforce existing rights and obligations, is to

[1] Reported in 65 N. W. 80.

be construed as applying to taxes levied (but prevented from being collected) prior to its passage, as well as to those levied thereafter.

(6) If the failure to state the amount of taxes for each year separately was an omission or irregularity, it was not one which went to the jurisdiction of the court, and it was waived by the failure of the landowner to set it up in his answer as a defense or objection to the taxes.

(7) A tax never bears interest, either as interest or as damages, except by force of statute. The statutes of this state do not provide for charging interest on taxes until after sale on the judgment, but, on the contrary, clearly contemplate that all that shall be added to the original tax prior to sale is the prescribed penalties and costs. The fact that the landowner interposes an answer which is overruled on the trial, or that the public officers neglect to bring on the issues raised by answer for trial and determination within the time contemplated by statute, does not authorize charging interest on the delinquent taxes, and including it in the judgment.

Three separate proceedings in the district court for Hennepin county to enforce payment of taxes on real estate. The cases were tried together before Jamison, J., and were separately certified to the supreme court. Modified.

*F. M. Nye*, County Attorney, and *A. H. Nunn*, for plaintiff.

*Edward C. Gale*, for defendant.

Defendant's motion to strike the proceedings from the calendar should have been granted. The clerk's register is one of the records of the court. G. S. 1894, § 861. Defendant's motion to dismiss should have been granted. The statute looks to an immediate trial at the next general or special term. G. S. 1894, §§ 1586–1589. The statute is mandatory. Brown v. Hogle, 30 Ill. 119. The special tax proceedings of 1893 to recover taxes for the same years are in effect an abandonment and dismissal of these actions. Knudson v. Curley, 30 Minn. 435, 15 N. W. 873; Croswell v. Benton, 54 Minn. 264, 55 N. W. 1125; Mulvey v. Tozer, 40 Minn. 384, 42 N. W. 387; Farnham v. Jones, 32 Minn. 7, 19 N. W. 83. Laws 1885, c. 2, § 23, is not retroactive. Statutes are prospective unless the contrary appears. 23 Am. & Eng. Enc. Law, 448; Parkinson v. Brandenburg, 35 Minn. 294, 28 N. W. 919; McManus v. Duluth, C. & N. R. Co., 51 Minn. 30, 52 N. W. 980. The court erred in including interest. The existence of a contract is the ground for allowance of interest. Sibley v. County of Pine, 31 Minn. 201, 17 N. W. 337; Shaw v. Peckett, 26 Vt. 482. Taxes

are not contracts, and the consent of the individual is not required. Peirce v. City of Boston, 3 Metc. (Mass.) 520; Cooley, Tax'n (2d Ed.) 17, and cases cited; Dillon, Mun. Corp. § 817 (655). See City of Faribault v. Misener, 20 Minn. 347 (396). Taxes being in invitum do not bear interest except where it is expressly so provided by statute or ordinance. Shaw v. Peckett, supra; Perry County v. Selma, M. & M. R. Co., 65 Ala. 391; Edmonson v. City of Galveston, 53 Tex. 157; Danforth v. Williams, 9 Mass. 324; Haskell v. Bartlett, 34 Cal. 281; Himmelman v. Oliver, 34 Cal. 246. Cf. County of Redwood v. Winona & St. P. Land Co., 40 Minn. 512, 516, 41 N. W. 465.

MITCHELL, J. This proceeding was commenced January 20, 1887, by filing in the office of the clerk of the district court a list of taxes on real estate for the year 1885, in which list a tract owned by R. J. Baldwin was charged with taxes for the year 1885, together with those for 1877, 1878, 1879, 1880, 1881, and 1883; added thereto in one gross sum of over $2,500, without specifying the amount for any particular year. Baldwin answered March 15, 1887, denying the assessment or levy of any taxes on the land except for 1885. The register of actions kept by the clerk of the court contains this entry in the proceeding: "Cause tried July 23, 1888;" but there is no other evidence, record or otherwise, that the proceeding was ever tried. On July 15, 1893, pursuant to the provisions of Laws 1893, c. 150 (G. S. 1894, § 1579, note), a list was filed in the office of the clerk of the district court of all taxes which became delinquent in 1889 or prior years, and were not satisfied by payment, redemption, or sale of the land to actual purchasers. This list also contained the same tract above described, and against it appeared the taxes for the same years, sought to be enforced in this proceeding. Baldwin also answered in that proceeding, setting up as one of his defenses the pendency of the present or prior proceeding. That proceeding is still pending and undetermined. The present proceeding (commenced in January, 1887) was brought on for trial May 28, 1895, and, after motions on part of Baldwin to strike from the calendar and to dismiss were overruled, was tried on the merits, and judgment was ordered against the property for the whole amount of taxes claimed, together with penalties, costs, and interest, amounting to over $5,000.

The trial court certifies to this court for its determination the fol-

lowing questions, which had all been decided adversely to Baldwin: "First. Is the entry in the clerk's register of 'Cause tried' sufficient to establish the fact of a former trial, and if so, and for that reason, without further evidence, was the trial had in these proceedings, May 28, 1895, unauthorized and void? Second. Did the lapse of time between the commencement of these proceedings and this trial render such trial unauthorized, and entitle defendant to a dismissal of the action? Third. Did the inclusion of the taxes for the year 1885 and the prior years named, in the special tax proceedings of 1893, work an abandonment or dismissal of these proceedings, commenced in 1887, and then pending to enforce the same taxes? Fourth. Was the inclusion in these proceedings of the taxes for the years 1877, 1878, 1879, 1880, 1881, and 1883, or any of them, and the attempt to enforce the collection of the taxes for these years, or any of them, in this action, authorized by law? Fifth. Does the fact that the amount sought to be enforced as the taxes for these several years was named in the delinquent and published list as one gross sum, and the amounts claimed to be due for the various years, respectively, were not separately stated, render these proceedings unauthorized and void as to the taxes for all or any one of such years? Sixth. Does the amount charged against the land in this action, and set forth in said delinquent list as $2,541.57, bear interest from the time of filing such list to the time of entry of judgment thereunder at the rate of 1 per cent. per month, as computed by this court in its findings and decision hereinabove set forth, or, if not, what rate of interest does it so bear, if any?"

1. The first question must be answered in the negative. This memorandum of the clerk in his register of actions was by itself no evidence that the proceeding had ever been tried.

2. The second question must also be answered in the negative. Assuming, without deciding, that the delay of a plaintiff to prosecute an action may be so long as per se to amount to a legal discontinuance, yet we do not think that, as against the public, the delay of the public officers to bring this proceeding on for trial for somewhat over six years should be held to operate as a discontinuance, or to entitle the appellant to a dismissal on the trial. So far as appears, he never objected to this delay, and, under the circumstances, we may assume that he was entirely willing that the proceeding should never

be brought to trial.     The provisions of G. S. 1894, § 1586, that in such proceedings the answers shall stand for trial at the same or next general or special term of court, etc., are directory, and not mandatory.

3. The inclusion of the same taxes in the special tax proceedings of 1893 was equivalent to the commencement of another suit for the same cause of action, but did not operate as a dismissal or abandonment of the first proceeding.     The cases cited by counsel in which we held that Laws 1881, c. 135 (G. S. 1894, § 1579, note), providing for a sort of general clearing-up tax sale, proceeded upon the theory that the state waived all rights under any prior sales or forfeitures and recognized the owners as still having rights in the lands, are not in point.     See Knudson v. Curley, 30 Minn. 433, 15 N. W. 873; Farnham v. Jones, 32 Minn. 7, 19 N. W. 83; Mulvey v. Tozer, 40 Minn. 384, 42 N. W. 387; Croswell v. Benton, 54 Minn. 264, 55 N. W. 1125.     The language used in these cases must be construed with reference to the questions before the court.     They simply decide that by the statute of 1881 the state waived any rights under prior sales or forfeitures, and recognized existing equities in the owners of the lands.

4. The argument of counsel for the landowner upon the fourth question is wholly based upon the proposition that Laws 1885, c. 2, § 23 (G. S. 1894, § 1631), is prospective in the sense that it only authorizes the auditor to add to the tax for the current year taxes for other years, which shall, after the passage of the act, be prevented from being collected.     In support of this contention he relies on the phrase "if any tax" "is prevented from being collected."     The statute in question does not impair any vested right, or create any new right, or impose any new obligation.     It is purely remedial, and merely gives a remedy for enforcing existing rights and obligations.     Such statutes are to be liberally construed, in order to accomplish the beneficent purpose for which they were enacted; and, unless a different legislative intent is expressed or clearly implied, they will generally be construed to apply to rights and obligations that accrued before enactment, as well as to those to accrue thereafter.     Such, we think, is the construction which should be given to the statute under consideration.

5. The fifth question is as to the effect of stating, in the delinquent list filed and published, the amount of the taxes for all the years in one gross sum.     If this was an omission or irregularity, it was not

one which affected the jurisdiction of the court. G. S. 1894, § 1582. It did not appear that it resulted in any prejudice to Baldwin, or that he did not know, or had not the means of ascertaining, the amount of tax for each year included in the total sum charged against his land. Whether, in view of the provisions of section 1588, the omission, if it was one, would have been available to him as a defense to the application for judgment, we need not consider, because he waived it by not setting forth any such defense or objection in his answer.

· 6. The sixth and last question is whether the delinquent taxes charged against this land bear interest, and, if so, at what rate, and from what date. A tax is not founded on contract or agreement. It operates in invitum. In its essential characteristics, it is not a debt or in the nature of a debt. Hence, while a debt bears interest from its maturity, a tax never bears interest, either as interest or as damages for its nonpayment, except by force of statute. This proposition is so elementary that the citation of authorities in its support can hardly be necessary. See, however, 1 Sutherland, Dam. § 337; 1 Sedgwick, Dam. § 332, and cases cited.

By reference to the statutes of this state, we find not only no authority for charging interest on delinquent taxes, but that every provision relating to the enforcement of taxes, by inference and implication, points to the opposite conclusion. Real-estate taxes become delinquent on the 1st of June, and a penalty of 10 per cent. is then added. On the 1st of January following, an additional penalty of 5 per cent. is added. On the 20th of the same month, the delinquent list is to be filed with the clerk of the court, containing "the total amount of tax delinquent and penalty" against each tract. The filing of this list is to have the effect and force of filing a complaint in an action against the land to enforce payment "of the taxes and penalties" therein appearing against it. Within 15 days thereafter, a copy of this list is to be delivered to the county auditor, who, within 15 days after that, is to proceed to publish the list with a notice attached that the list of taxes and penalties on real estate, of which the published list is a copy, has been filed, and requiring persons interested to file, on or before March 20th, their answers, setting up their defenses to the taxes, and that, if they fail to do so, judgment will be entered against the land for the taxes on said list appearing

against the land, and "for all penalties, interest, and costs." When the last publication is made, the court obtains jurisdiction to enforce "the taxes, accrued penalties, and costs." By answer, a party may set up his defense or objection "to the tax or penalty." In case no answer is filed, the clerk shall, on March 21st, enter judgment that each piece or parcel is liable for taxes, penalties, and costs to the amount set opposite the same, and such amount of taxes, penalties, and costs are a lien thereon. When an answer is filed, it is to stand for trial at the same general or special term of court, and, if none is appointed to be held within 30 days, then at any term to be appointed on 10 days' notice; and the court is required to proceed without delay, and summarily hear and determine such defenses and objections, and direct judgment accordingly at the same term. Where an answer is filed, and the court, after hearing, sustains the taxes and penalties in whole or in part, judgment is to be entered "for the amount as to which such taxes and penalties shall be sustained," "with penalties and disbursements." There is also a provision that if all the provisions of law in relation to the assessment and levy of taxes have been complied with, of which the list filed with the clerk is prima facie evidence, then judgment shall be rendered for such taxes, penalties, and costs, and, at any time before sale, a party may redeem by paying "the amount so adjudged," and the "amount of accrued penalty and costs"; also, that at any time after the delinquent list is filed, and before judgment, a party may redeem by paying "the taxes, penalty, and costs due thereon." The tax sale is to take place on the first Monday in May, and the notice is to the effect that the lands are to be sold "which are charged with taxes, penalties, and costs in said judgment."

The only provisions as to interest are contained in G. S. 1878, c. 11, § 98 (G. S. 1894, § 1613), which reads as follows: "The amount charged by the judgment against any piece or parcel of land shall bear interest at the rate of one per cent. per month from the date of the sale. The amount for which any piece or parcel shall be sold or bid in for the state shall bear interest from the date of the sale until redemption at the rate of one per cent. per month; and the amount paid by any assignee for the right of the state shall bear interest at the same rate until redemption. * * * The amount paid by any purchaser or assignee of the state for taxes, penalties,

costs and interest accruing subsequent to the sale or assignment, shall bear interest at the same rate until redemption: provided, that when the amount bid and paid by the purchaser at any public sale shall be greater than the amount charged by the judgment, such purchaser shall be entitled to interest upon no greater amount that that charged by said judgment." Prior to 1887 the rate of interest after sale was 1½ per cent. per month, the only effect of the amendment of that year being to reduce it to 1 per cent. per month. Laws 1887, c. 60, § 5 (G. S. 1894, § 1613). This section must be read in the light of the provisions that no tract can be sold to a purchaser for less than the amount charged against it by the judgment, and that, if no one bids that much, it must be bid in for the state for the amount of the judgment. Hence, in effect, the provision of the statute is that interest is to be charged from the date of the sale on the amount for which it is sold (not exceeding the amount of the judgment), or for which it is bid in for the state.

It is clear from all this, not only that the statute contains no provision for charging interest on delinquent taxes before sale, but that the clear legislative intendment was that interest should not be chargeable before that date, and that up to that time the various penalties and costs provided for should constitute the only additions to the original tax before sale. The only place where "interest" is referred to before sale is in the form given for the notice of application for judgment attached to the published list; but this, in the absence of any provision authorizing interest to be charged, and providing at what rate and from what date, is insufficient to authorize the charge of interest. The word "interest" was evidently inserted in the form of notice by inadvertence. The view we take of the statute is in accordance with what we believe to be the practical construction placed upon it by public officials, for we do not understand that it has ever been the practice to charge interest on delinquent taxes before sale, either by including it in the amount of the judgment or otherwise. The legislature clearly contemplated the prompt disposition of all objections and defenses to the taxes, so that judgment should be in all cases entered in time to have all lands sold in May; and they evidently considered that the penalties and costs provided for would be ample both to compensate the state for the delay

in the payment of the taxes when due, and also to reasonably insure their prompt payment.

It has been suggested that, if Baldwin had not interposed an answer, presumably judgment would have been entered in March, 1887, and the land sold or bid in for the amount of the taxes against it in the following May, after which time the amount for which it was sold or bid in would have drawn interest at 1 per cent. per month; and that, therefore, as by interposing an unfounded defense (as has been determined by the court) he has prevented the sale from being made at that date, according to the maxim that that will be considered done which ought to have been done, his land should be charged with interest at 1 per cent. per month on the amount for which judgment would have been entered, and for which it would have been sold, from the first Monday in May, 1887, when it would presumably have been sold but for the filing of an answer. We are unable to find any principle of law or rule applicable to the allowance of damages upon which this can be done. It might work practical justice in this particular case, but legal principles cannot be disregarded for the purpose of meeting "hard cases." It is true that judgment might have been entered, and the land sold, at the dates suggested, had no answer been interposed; but the proximate and efficient cause of this long delay was not the interposition of the answer, but the gross negligence of the public officials in not promptly bringing the matter to trial and determination, and obtaining judgment, and making the sale when they might and ought to have done. To apply the maxim referred to in favor of the state, under the facts, would, it seems to us, be both to pervert and to invert it. Morally considered, it may be inequitable that the state should be deprived of interest on these taxes for over eight years, and that Baldwin should by his default gain an advantage over others who paid their taxes promptly; but this is the unfortunate consequence of negligence on part of public officials, and we have been unable to discover any legal principle upon which it can be avoided.

What has been said covers all the questions presented by the two other appeals, except the one relating to special assessments, which has been abandoned by the appellant.

Our conclusion is that the trial court decided all the questions cer-

tified up correctly, except the last, relating to interest. Upon all the appeals the proceedings are remanded to the court below, with instructions to amend and modify its conclusions of law and order for judgment in each case so as to exclude interest from the amount of the judgments.

CANTY, J. I concur in all of the foregoing opinion except that portion of it which is given in answer to the sixth question. I also concede that the statute does not contemplate the charging of any interest on delinquent taxes until the day of the sale, which is the first Monday in May next after the tax has become delinquent. The statute imposes a penalty of 10 per cent. on the 1st of June when the tax becomes delinquent, an additional penalty of 5 per cent. on the 1st of January, and provides for interest at the rate of 1 per cent. per month from the day of sale, which should be on the first Monday in May following. In my opinion, this is a case for the application of the maxim, "The law considers that done which should be done," and that, when a property holder puts in an answer merely for the purpose of delay, he should not have the benefit of that delay. The statute fixes the day when the land shall be sold for taxes. It fixes the same day as the day from which interest shall begin to run. I cannot hold that it is the spirit and intent of this statute that such sale is necessarily a condition precedent to the incurring of interest. In this respect the statute should be construed liberally, in favor of the state. Most of the cases in which tax laws are construed are cases where an attempt is made to enforce a forfeiture of the property, and in such cases the law is always construed strictly, for the purpose of avoiding such a forfeiture. We are so much in the habit of construing tax laws strictly against the state that we are liable to forget that it is possible for a case to arise where the rule of construction should be reversed, and it seems to me that this is such a case.

In my opinion, it is the proper construction of this statute to hold that the right of the state to interest does not depend upon the success or failure of the dilatory tactics of the defense, but is just as much an absolute right as its claim for the principal of the tax, and that the intent of the statute is to charge all taxpayers with interest on unpaid taxes from the first Monday in May, the day the land should

be sold. If, at the time of the trial, the court determines that, by reason of delay, the land cannot be sold until the next sale day, a year later, it should order interest to be added from the day when the land should be sold until the day when it can be sold.