STATE v. CROOKSTON LUMBER COMPANY.[1]

February 7, 1902.

Nos. 12,895—(212).

**Taxes—Assessment—County Board of Equalization.**

The county board of equalization possesses no authority or power to make an original assessment of property for taxation. Its duties are confined to the equalization of assessments made by the township and other local assessors, and the performance of such other acts as are specially committed to it by statute.

**Record of Proceedings—Collateral Attack.**

The county auditor, as ex officio clerk of such board, is required by statute to keep an accurate record of all its proceedings and orders, to cause the same to be published in the official paper of the county, and to transmit a copy of the printed report to the state auditor. *Held,* that a record, made by him in the performance of his duty, in definite and unambiguous language, cannot, in a collateral proceeding, be impeached or contradicted by parol evidence, nor, where silent with reference to any order made or proceeding had, be supplied by extrinsic evidence.

Proceedings in the district court for Polk county for collection of delinquent personal property taxes for 1899. The case was

[1] Reported in 89 N. W. 173.

tried before Watts, J., who made findings of fact, and as conclusion of law found that plaintiff was entitled to judgment for $1,440, being the amount of the tax sought to be collected, and penalty thereon. On application of defendant the court certified to the supreme court for its determination the points stated in the opinion. Remanded, with directions to dismiss proceedings.

*W. E. Rowe* and *Holston & Hagen,* for the State.

*Wm. A. Lancaster,* for defendant.

BROWN, J.

Certified tax case from the district court of Polk county.

The facts are as follows: Defendant is a Wisconsin corporation, with its principal place of business in the city of Crookston, Minnesota, where its property is located. In 1899 the assessor of the city of Crookston duly assessed its personal property at the sum of $41,487. The assessment was approved by the city board of review, and duly returned to the auditor of the county. Thereafter the county board of equalization either attempted to raise such assessment, or to add an additional item of property to the assessment to the amount of $30,000; so that, as finally returned to the county auditor, defendant's property stood assessed at the sum of $71,487. Subsequent to this the state auditor, on application of defendant's treasurer, ordered the assessment reduced to the sum originally returned by the assessor, namely, $41,487. Erasures and corrections were accordingly made by the auditor in the assessment and tax books, which were thereafter delivered to the treasurer for collection. Defendant paid to the treasurer the taxes assessed against it on that basis, and was given the usual receipt. Subsequently, on the claim that the action of the state auditor in ordering the assessment reduced—the order having been made without notice to the authorities of Polk county—was unauthorized and void, this proceeding was instituted to enforce the payment of the taxes on the basis of an assessment of $71,487, as returned by the county board of equalization to the county auditor.

It is conceded by defendant that the order of the state auditor reducing the assessed valuation of defendant's property to that returned by the city assessor was irregular and unauthorized, the application therefor having been made ex parte, and without notice

to the Polk county authorities; and defendant further concedes that, if the $30,000 was ever rightfully placed upon the tax list, the taxes sought to be enforced in this proceeding are valid, and must be paid. But it is contended by defendant that the additional $30,000 was never legally placed upon the tax lists. This presents the only serious question in the case.

The preliminary objection made by the state that the record returned to this court is insufficient has been fully considered, and we conclude that, though the certificate may be somewhat informal, and not strictly accurate, it is sufficient. It is unnecessary, where tax cases are certified to this court, that the evidence be returned, unless it be necessary to present fully the questions certified for our decision. All the evidence bearing upon the validity of the additional assessment of $30,000 appears in the statement of facts, and it was unnecessary that any other evidence be returned.

The determination of the question whether the county board of equalization legally and properly increased the assessment in question depends upon (a) whether the records of that board may be contradicted or impeached; and (b) whether, where such records are silent as to any action taken by the board, the same may be supplied by extrinsic evidence.

G. S. 1894, § 1552, subd. 5, par. 2, on the subject of the county board of equalization, its meetings and duties, provides that

"The county auditor shall keep an accurate journal or record of the proceedings and orders of said board, and the said record shall be published the same as other proceedings of county commissioners, and a copy of such published proceedings shall be transmitted to the auditor of state with the abstract of assessment hereinafter required," etc.

The only record made by the county auditor of the proceedings on the part of the board of equalization in respect to the assessment of defendant's property is in the following language:

"The Crookston Lumber Company was assessed $30,000, under item 17, for logs in boom and drive."

No reference whatever is made to an increase or raise in the

assessment returned by the assessor and the city board of review, and the record made purports to be an original assessment by the board of equalization of $30,000 upon logs in boom and drive.  On the trial of the action in the court below the state sought to prove the passage of a resolution by the county board of equalization raising defendant's assessment the sum of $30,000. The records kept by the auditor, as we have already stated, are wholly silent upon the subject of any attempt by the board to raise the assessment.  For the purpose of showing that the assessment was raised, the chairman of the board of county commissioners, who presided at the meeting of the board of equalization, was called as a witness by the state, and testified that he drew a resolution on a scrap of paper in the following language:

"Resolved, that the Crookston Lumber Company be raised the sum of $30,000 on logs in boom and on drive."

He testified that the resolution was marked "Adopted," and delivered to the county auditor.  The resolution is not, however, among the records and files in that office, and, if it ever existed in point of fact, it cannot now be found, nor does the certified "case" disclose whether the resolution appeared in the published proceedings of the board.

The board of equalization is created by statute, with specially defined duties and responsibilities, and is of limited jurisdiction. It can exercise no authority except such as is conferred by the statutes, and is confined in the performance of its duties to a reasonably strict observance of the statutory requirements; and any substantial departure therefrom vitiates its action.  The county auditor, ex officio clerk of such board, is required to keep an accurate record of all the proceedings had or orders made by it, to publish the same, and to transmit a copy of the printed report to the state auditor.  The question to be determined in this case is whether, in view of these statutory requirements, the record so required to be kept may be contradicted or impeached in a collateral proceeding of this kind.  We are of opinion that it cannot.  To hold with the state on this question would result in confusion and uncertainty with respect to the orders made and proceedings had or taken by

the board, and render the statutory requirements of no practical effect. Under such a rule it could be shown by parol evidence, in a proceeding to enforce the payment of taxes, that an assessment made by the local assessor was in fact raised by the board of equalization, when the record made at the time disclosed that it was lowered; and the taxpayer would never know when his taxes had been fully paid. Much would depend on the recollection of officers, and uncertainty, instead of certainty, which the requirement of a record was designed to secure, would follow. Mulvey v. Tozer, 40 Minn. 384, 42 N. W. 387.

The record actually made in this case is that the board of equalization "assessed" defendant to the amount of $30,000 for certain personal property owned by it. The contention of the state is that the board intended by this action to increase the assessed value of the property already appearing upon the assessment list, and was not an attempt on its part to assess other property; and, further, if this contention be not sustained, that the board had the power under the statute to make an original assessment of property not reported by the assessor. We cannot concur in either contention. The requirement that a record be kept by the board is for the express purpose of perpetuating evidence of proceedings had or taken by it, that the public officials and taxpayers might be definitely and specifically informed as to the amount of taxes to be paid, and of all its acts pertaining to the taxation of property. The general rule with reference to such records, where required by statute to be kept, is that when once made and recorded in unambiguous language they cannot be impeached or contradicted by extrinsic or parol evidence. Cooley, Taxn. 480; Capron v. Raistrick, 44 Vt. 515; Lessee v. McLaughlin, 8 Ohio, 114; Moser v. White, 29 Mich. 59; Blanchard v. Powers, 42 Mich. 619, 4 N. W. 542; Hall v. Kellogg, 16 Mich. 135. Tax proceedings must stand or fall by the record made in compliance with statutory requirements. Cooley, Taxn. 313; Hadley v. Chamberlin, 11 Vt. 618; Hecht v. Boughton, 2 Wyo. 385; Taylor v. Henry, 2 Pick. 397; Halleck v. Boylston, 117 Mass. 469.

The copy of the resolution offered in support of the state's claim that defendant's assessment was raised by the board, or the

original, had it been produced, was, within this rule, incompetent and inadmissible for the purpose of varying or contradicting the record. It was not such a record as the statute contemplated should be kept, and was wholly inadmissible to prove what action the board in fact took in the matter. Hintrager v. Kiene, 62 Iowa, 605, 15 N. W. 568, 17 N. W. 910.

There is no uncertainty or ambiguity in the language of the record made by the county auditor, and by it the fact is shown that the board attempted to assess certain of defendant's property, which, for some reason, had escaped taxation. The resolution directly contradicted the record, was inadmissible, and the court erred in receiving it in evidence. If it be held competent to supply in this manner the record required to be kept by the statute referred to, or to contradict or impeach in a collateral proceeding the record actually made, the statute requiring the record might as well be wiped from the statute books. The object of the statute was to provide and perpetuate an authentic record for the purpose of accuracy in tax matters, and to place beyond controversy or dispute the actual proceedings had or taken by the board. So we conclude that the records must speak for themselves, and cannot be contradicted or impeached or supplied, where silent, by parol or extrinsic evidence. The board had no authority under the statutes to make an original assessment or listing of property for taxation. Its duties are limited and restricted to the equalization of assessments made by the various township and city assessors, and the statutes confer upon the board no authority to supply omissions of those officers in the matter of listing property for taxation.

The proceedings are remanded to the court below with directions to dismiss them.