BERNARD H. FITZPATRICK v. SIMONSON BROTHERS MANUFACTURING COMPANY.[1]

May 9, 1902.

Nos. 12,805—(47).

**Pleading—Denial.**

An allegation in a reply denying "each and every * * * matter and thing in said answer contained, save as the same * * * may have

------------

[1] Reported in 90 N. W. 378.

been heretofore stated in his complaint," is sufficient to put in issue the traversable facts of the answer, and is not vitiated by the addition of unnecessary conclusions of law not inconsistent with such denial.

### Decree of Heirship.

Laws 1897, c. 157, authorizes a decree of heirship upon the petition of an heir to an estate where the same has not been administered for five years after the death of an intestate, and provides for a final judgment that is conclusive upon all parties interested.

### Same—Jurisdiction of Probate Court.

The decree of heirship provided for in such act is within the authority delegated to probate courts by section 7, article 6, of the state constitution, which limits their jurisdiction to the "estates of deceased persons, and persons under guardianship."

### Construction of Laws 1897, c. 157.

The words, "when any person shall die intestate," in Laws 1897, c. 157, § 1, are to be construed liberally, and the act *held* to apply to estates where the decedent may have died before, as well as after, the enactment of that law.

### Seal of Probate Court—Authenticated Copy of Records.

The clerk of the probate court of Ramsey county is authorized to authenticate and certify copies of the records of such court, and the use of its seal upon a certificate in proper form for that purpose entitles the same to use as evidence.

Action in the district court for Pine county to determine the adverse claim of defendant to vacant and unoccupied land. The case was tried before Crosby, J., who found in favor of plaintiff. From a judgment entered pursuant to the findings, defendant appealed. Affirmed.

*John Lind* and *A. Ueland,* for appellant.

*John F. Fitzpatrick,* for respondent.

LOVELY, J.

This is an action to determine the adverse claims of defendant to eighty acres of unoccupied land in Pine county. The answer denies that plaintiff owns the land, or has any interest therein, admits that it is vacant, and sets forth two tax judgments under which defendant claimed through mesne conveyances from purchasers at the tax sales. The reply in terms

First, "Denies each and every allegation, matter, and thing in said answer contained, save as the same may be herein or may have been heretofore stated in his complaint."

Second, "Alleges that all pretended tax titles, tax certificates, and tax proceedings in said answer set forth are wholly and absolutely void, and of no force or effect."

The cause was tried to the court, who found that the plaintiff was the owner of the land; that the same was unoccupied; that all other facts alleged in the pleadings were not proved; and, as a conclusion of law, that plaintiff was entitled to judgment. Judgment was entered, from which defendant appeals.

Three distinct questions presented on this review will be considered: First, the objections to the pleadings; second, the legality of a decree of heirship, upon which plaintiff relies; third, the right of a clerk of a probate court to authenticate its records.

1. The sufficiency of the answer in setting forth the proceedings legally essential to perfect the tax judgment is questioned. Since defendant relied entirely upon the failure of the reply to put in issue the validity of the tax sales, and introduced no evidence, if the reply is sufficient, the objections to the answer become immaterial. To clearly indicate the pith of defendant's objections to the reply, we have, in quoting therefrom, divided it into two clauses. The first is a general denial, the second an allegation that "the tax titles, tax certificates," etc. (alleged in the answer), "are void." It is not the claim of defendant that the general denial was insufficient to traverse the tax judgments, but that the second clause, wherein the tax titles are specifically referred to, applies solely thereto, and, under the familiar rule that, where specific averments follow general statements in a pleading, the former are controlling, and that the distinct reference to the tax titles in such second clause being a mere conclusion of law, the same are not put in issue. Specific averments, however, to control general statements in pleadings, must not only be sufficient for one, but for all, legal purposes. We shall adopt the view of defendant so far as to treat the second clause of the reply as a conclusion of law. If so, it was not a material part of that pleading, and is not only ineffective to traverse the tax judgments, but also worthless

to limit the scope of the previous general denial. The illegal conclusion of law in the second clause of the reply amounts to mere surplusage, nothing more. The defendant is entitled to have it disregarded; but he cannot go further, and say that it shall still be effective for his benefit.

2. At the trial plaintiff offered a patent from the United States to Joseph Gray, and then sought to establish, by a decree of heirship of the probate court of Pine county, title in the heirs of the patentee. The heirs of Gray under this decree conveyed to Butler Comstock. Comstock died in Ramsey county. His estate was administered. In the decree of distribution the property in question was set apart to two persons named therein. This decree was received in evidence over the objection that it was not properly authenticated. The distributees of Comstock deeded directly to plaintiff, and it is through such conveyances, and the two decrees referred to, that plaintiff's title can be sustained.

The decree of heirship was under the provisions of Laws 1897, c. 157, which provides that, "when any person shall die intestate, seized of an estate of inheritance in any lands,  *  *  *  where administration shall not have been granted  *  *  *  after five years from the death of such decedent," any heir or grantee may institute proceedings in the probate court of the county in which the lands are, to assign the same to the person entitled thereto. The petition must set forth the names, ages, residences, and relation to the decedent of the heirs. It further provides that the court may fix a time and place of hearing, notice thereof to be given by publication. Guardians shall be appointed for minors or others under disability. At the time of the hearing any person interested may appear and answer the petition, and if, after hearing, it shall appear to the satisfaction of the court who are the heirs, and what are their respective rights or interests in the land of decedent, the court shall, by its decree, find and determine the same, and assign the lands to the parties entitled thereto.

The first objection to the decree of heirship is that it appears therein that decedent, Gray, died in 1861, and five years had not elapsed since the enactment of chapter 157, supra, when his death

occurred; for which reason, it is urged, his heirs were not entitled to the benefits of such act, upon the claim that by the words in section 1 thereof, "when any person shall die intestate," this law is limited to operate prospectively to those cases only where the prerequisite conditions death and the lapse of five years occur subsequent to the enactment of the law.

We are unable to adopt this view. It is a matter of common knowledge familiar to those conversant with the subject, that when this statute was adopted many deaths had occurred where the heirs or parties interested in the decedent's estate had paid the debts, and no legal administration had been instituted, or decree of distribution made. As time passed, difficulties would and did, as is easily conceivable, arise in the transfer of real estate by the heirs from the omission to have their rights clearly defined, and the record evidence of the same established. Within the wisdom of the law, five years had long been recognized as the proper period after death to limit the collection of claims against a deceased person. G. S. 1894, § 4514. Hence creditors within that time only could have an interest in the administration of an estate, and would not be likely to apply therefor afterwards. We have no doubt that it was to obviate the difficulties arising from the failure to administer such estates and obtain a decree of distribution therein that furnishes the legislative reason for the enactment of chapter 157, supra; and the fixing of the time before which proceedings thereunder could not be instituted would seemingly have no reference to any other condition than the probability that after such time the regular course of settlement by administration would be unnecessary.

We can imagine no other sensible ground upon which the legislature could have made the distinction in the relief it intended to give, or that could have justified the lawmakers in saying this is a wholesome remedy only where its benefits are to accrue to those whose ancestors die five years after the law takes effect, but it is to be withheld from very many otherwise within the benefits we bestow. The reasons are against, rather than in favor of, such an unjust discrimination.

We are confirmed in this construction by the terms of a subse-

quent statute, intended to accomplish the same purpose. In Laws 1901, c. 346, the provisions of chapter 157, supra, are recast, but the ends sought are the same. In the act of 1901, a new collocation of words is used, which unquestionably applies its benefits to the estates of all persons who had died before, as well as after, the law was enacted. But in the latter, as in the former, act, proceedings could not be instituted until five years after the death of decedent. If any inference of purpose or intent can be drawn from' subsequent legislative action, we think it is found here, for it well may have been one of the objects of this latter statute to clear up the doubts suggested by the defendant's contention. Be this as it may, the word "shall" is often used in remedial statutes in a general sense, including both the past and the future, and should be so considered where a more restricted interpretation is not required. We therefore hold that chapter 157, supra, being intended to give a remedy for existing rights, must be liberally construed, in order to accomplish the beneficent purpose for which it was enacted, and should be applied to rights and obligations that accrued before its enactment, as well as those to accrue thereafter. This conclusion is supported by State v. Baldwin, 62 Minn. 518, 522, 65 N. W. 80.

We next come, under our consideration of the decree of heirship, to what we regard as the most serious question on this appeal. It is urged in behalf of defendant that chapter 157, supra, which provides for a decree in rem, involves rights to real property, which, under prescribed constitutional limitations, could not be determined by the probate courts of this state. It is conceded that, if this statute goes no further than to provide for the establishment of evidence of a presumptive character, it might be sustained under the rule laid down in Irwin v. Pierro, 44 Minn. 490, 47 N. W. 154. It is urged, however, that this law provides for and justifies a judgment that shall be final and conclusive upon the rights of the parties to the property involved. We have easily reached the conclusion that such is its plain purpose and substantial effect. It becomes necessary, therefore, to determine

86 M.—10

the question whether its scope and the results to be accomplished thereby are within the proper exercise of probate authority.

The constitution confers upon probate courts in this state "jurisdiction over the estates of deceased persons, and persons under guardianship" (Const. art. 6, § 7), but excludes authority beyond such limitations. We need not take time to further define and illustrate the subjects of probate jurisdiction than to generally state the constituent elements that call it into action and control its effective administration. There must be a death, the ownership of property by the deceased, and there may be also that well-recognized and important incident of probate authority,—the distribution of decedent's property among heirs or legatees. Proceedings in probate courts are most frequently instituted upon an application for the appointment of an executor or administrator, but this is not the decisive test of its jurisdiction. In a leading case in the supreme court of the United States it is held with reference to this subject that:

"The power to hear and determine a cause is jurisdiction. It is coram judice whenever a case is presented which brings this power into action. If the petitioner presents such a case in his petition, that on a demurrer the court would render a judgment in his favor, it is an undoubted case of jurisdiction. * * * No other requisites to the jurisdiction of the county [probate] court are prescribed." Grignon's Lessee v. Astor, 2 How. 319, 338.

Under the statute before us the right to determine the heirship depends upon the death of the party and his ownership of property, which essential jurisdictional conditions would seem to be sufficient, under the constitution, to give the right to the probate court to hear all questions essential to the decree of heirship provided for in that law. The probate forum is often unadvisedly spoken of as of limited jurisdiction, but the powers of this court are not only general, but plenary, in cases where it is authorized to act, and the term "limited jurisdiction," when appropriate, cannot be used in any restrictive or narrow sense. Within the span of the longest life the property of every citizen is the subject of its beneficent protection. Its decrees determine interests and rights

of the greatest consequence, and are entitled to as much consideration as the judgments of any other tribunal. While it is true that the probate court has no authority to entertain an action to recover real property or a suit to compel the conveyance of lands, neither has the district court the right to entertain original jurisdiction of the settlement of estates. The power of each forum is distinguishable from the other, but each is ample to the exercise of all necessary authority within its own sphere; and where the probate jurisdiction rests upon the proper basis for judicial action, viz., death, property, and heirship, its judgment is final and conclusive upon all parties. Grignon's Lessee v. Astor, supra; Greenwood v. Murray, 26 Minn. 259, 2 N. W. 945; Davis v. Hudson, 29 Minn. 27, 11 N. W. 139; Ladd v. Weiskopf, 62 Minn. 29, 64 N. W. 99; Eddy v. Kelly, 72 Minn. 32, 74 N. W. 1020; Bengtsson v. Johnson, 75 Minn. 321, 78 N. W. 3.

There are certainly as substantial reasons for the determination of an heirship incident to and following the death without administration as where the decree assigns and distributes property at the end of the administration. Where distribution is decreed upon administration, the judgment, as we have seen, is final, and binds all parties interested in the estate; and it follows necessarily that the decree of heirship, when administration, through neglect or inadvertence, is not instituted, but is secured under chapter 157, supra, it is entitled to the same weight, for the difference in obtaining it in either case is one of form rather than substance, of procedure rather than authority, for the probate procedure is within the control of the legislature, since the practice has not been regulated or restricted by the organic law. Statutes similar to the one now under review have been enacted and continued in force for many years in sister states. Chapter 157, supra, is substantially a copy of the Wisconsin law (R. S. [Wis.] 1898, § 3873a), which has been in force for twenty years. Michigan has a similar law (3 How. An. St. §§ 5992a, 5992d). See 3 New York Code Civ. Proc. (5th Ed.) §§ 2654–2659.

We have been cited to no case from the states where these statutes are in force, nor have we been able to find that the precise point here invoked has been raised in those jurisdictions, although

the exercise of probate authority is the same in the states referred to as in our own. We infer from the absence of precedent in this respect that these remedial statutes have been generally acquiesced in by a profession naturally jealous and critical of excess of judicial power. This is a strong argument in favor of the validity of the law.

We are unable, for the reasons stated, to deny the jurisdiction of the probate court of Pine county to make the decree of heirship, and therefore hold that it was properly received in evidence.

3. It is further urged for defendant that the decree of distribution setting apart the land in question to the heirs of Butler Comstock was improperly authenticated. Such decree was certified by the clerk of the probate court of Ramsey county. No question is made as to the form of the certificate, but it is insisted that the clerk of a probate court is not authorized to authenticate its records, but this is exclusively the duty of the judge. This objection is based upon the statutes which provide that the custodian of records may certify to the same (G. S. 1894, §§ 5725–5733), and there is no express act making the clerk of a probate court the custodian of its seal or records. The office of the clerk of a probate court, as well as his appointment by the judge thereof, is provided for in the state constitution (art. 6, § 7). His compensation is fixed in Ramsey county by Laws 1899, c. 145, and, as stated in Walter v. Greenwood, 29 Minn. 87, 12 N. W. 145: "When the constitution declares that the duties of clerks of district courts shall be prescribed by law, it does not use the word 'law' * * * as synonymous with 'statute,' but in a broader sense, as including both statutory and common law." Hence, when the legislature had provided that the judge of probate may appoint a clerk, who shall perform all duties assigned to him by law or by such judge, which appointment is to be in writing, and filed in the office of the clerk of the district court; and, further, that before entering upon the duties of the office such clerk shall take the oath required by law and execute a bond (G. S. 1894, §§ 821, 822),—it may fairly be implied that when such clerk acts in a manner to indicate that he is the custodian of the records and the keeper of

its seal he is exercising the official functions of a clerk of a judicial tribunal.

A court has been described as a place wherein justice is judicially determined, meeting at fixed times and places and deciding issues brought before it, with a clerk to record and attest its proceedings, as well as an executive officer to execute its orders (Brown, Jur. [2d Ed.] § 1); and the fact that the certificate upon the record received in evidence in this case was certified by a person acting as clerk of the court, to which is attached its seal, is sufficient, presumably, to indicate that such clerical acts were performed within the line of duties imposed upon him by the court or by law. Such presumption is necessary, and must be given due effect, although it does not depend upon an explicit provision making him the custodian of the records which he authenticates, but the use of the seal by the clerk must be regarded as proof of his authority in that respect. The clerk of this court is not expressly declared by statute to be the custodian of its records, nor authorized to authenticate the same. His use of its seal in the certification of its records is of daily occurrence; but authority in that respect must be implied, and that such authority may be implied when the clerk of a probate court does the same is equally clear. We have no doubt that the decree of distribution was properly received in evidence.

The judgment appealed from is affirmed.