## J. & T. GREEN *v.* ANDERSON & HILZHEIM.

1. STATUTES: REMEDIAL AND RETROACTIVE: CONSTRUCTION OF.—A statute should not receive such a construction as to make it impair existing rights, or create new obligations, or impose new duties,or disabilities in respect to past transactions, unless such plainly and expressly appear to be the intention of the Legislature; but this rule does not apply to the construction of statutes purely remedial. On the contrary, remedial statutes are construed liberally to advance the remedy; and hence, when a statute is passed giving a new and summary remedy for certain causes of action, it will apply to causes of action of that class existing prior to its passage, without any express words to that effect.

2. SAME: SAME: FRAUDULENT ASSIGNMENT MADE BEFORE REV. CODE WENT INTO EFFECT: GROUND OF ATTACHMENT.—The attachment law of 1857 is purely remedial; and so much of it as gives the remedy by attachment against a debtor who has made an assignment of his property to defraud his creditors, applies as well to assignments made before the passage of the Act as to those made afterwards.

ERROR to the Circuit Court of Hinds county. Hon. John Watts, judge.

*Yerger* and *Ruck*, for plaintiff in error.

No memorandum of the argument of counsel for plaintiff in error has come to the possession of the Reporter.

*W. P. Harris*, for defendants in error.

The case presents the single question as to the construction

and effect of the attachment law, which went into operation *after* the alleged fraudulent act complained of had taken place. The fact that only six months separated the act from the law which, for the *first time, made it cause* for *seizure of the parties' goods,* makes no difference. It stands on grounds as clear as though six years had intervened. The principle is the same.

We do not deem it necessary to lay any stress on the proposition that the Legislature had no power to make a past act ground for seizure of person or goods, and thus to attach severe consequences to an act which at the time it was done was not, by existing law, visited with any such consequences. It is sufficient to say, the consequences, seizure of goods, (and seizure of the person of the debtor might with equal propriety have been authorized,) approach so near to penal consequences, 'involving extraordinary process to take property before judgment—consequences which might ruin the credit and destroy the business of the citizens—that it is well worthy of consideration whether the construction which would give the statute retroactive effect, so as to reach past transactions, does not conflict with the principles of the constitution.

It is, in effect, creating a *cause of action,* or making that a ground for an extraordinary proceeding against the course of the common law which was not a cause for attachment at the time it was done, attaching very serious and injurious consequences to an act which at the time it was done involved no such consequences; and one of these consequences is substantially a forfeiture of the right to be proceeded against by the course of the common law.

But it may be assumed, for the sake of the argument, that the Act, with a construction which would give it effect upon a conveyance made long anterior to its passage, would come within the legitimate scope of the admitted power to modify remedies for existing causes of action; still the same *principle* which induced the framers of the constitution to prohibit interference with vested rights by legislation, or the creation of obligations where none existed, and forbid the Legislature to attach any penal consequences to acts, on which, at the time they were done, the law imposed no such consequences, has induced courts of justice to adopt a rule of constructing statutes by which they

are never allowed to affect past acts or transactions, even in cases where legislative power is conceded, unless the language of the statute leaves no other alternative. Upon the rational ground that the law-maker's field of operations lies in the future, his face is turned to the future. The *judge* looks at the past—that the character and consequences of acts must and should be fixed by the law which existed at the time they were committed. It must be clear and manifest that no other construction comports with the language and meaning of the statute.

I insist that the attachment law of November, 1857, and that portion which gives the remedy where none existed before—as, for example, for and on account of fraudulent assignments—must be construed to apply to assignments made *after* the passage of the Act: we do not mean, to *debts, or demands, or to actions, created* or *commenced after the* passage of the Act, but those *acts* of the party which give the ground of the attachment. The words, " has, or is about to," have reference to the time the *oath* mentioned in 2d Art. is made—that is to say, when the creditor makes oath, the assignment has either taken place or is in progress or about to be commenced, and his affidavit may either precede or succeed the consummation of assignment. The phraseology, therefore, was designed simply to cover assignments already consummated, and those in progress or in contemplation *at the time the oath is taken,* as is palpable if we consider the structure of the Act, Art. 2: creditor "shall make oath" *that* the debtor "has assigned or is about to assign"—the object being not to make "has" *cover* all past time, but merely to *characterize* a *consummated assignment* as *distinguished from one incomplete or merely about to be* consummated. When the creditor goes to make his oath the act may be already complete, and then he swears the debtor " has assigned ;" if the act is not complete, he swears that he " is about to assign." It was never designed that "has" should refer to the time of the passage of the statute.

It will be apparent from an examination of the statute that there is no word, or phrase, or provision, which, fairly interpreted, requires the court to extend the Act to past acts or assignments.

The first, second, and third grounds presented in Art. 2 were

grounds of attachment under the former law.    The new causes
begin with the fourth class.    As to that class the statute says
that the creditor shall make oath that the debtor has rights in
action, &c., which he "*conceals and refuses* to apply," and using
the *present tense*, obviously with reference to the time the oath is
made ; and it is equally evident that in the fifth class the words,
"or is about to assign," *could not have* reference to the time of
the passage of the Act, but to the time of making the oath, and
it follows as necessarily that "has assigned" must refer to the
same time, because merely used in opposition to the other
language, or as making the distinction between a consummated
and unconsummated act of fraud.    There cannot be a doubt on
this point.  The phrase, "has assigned," therefore, does not neces-
sarily embrace assignments made prior to the passage of the
Act, as it occurs in the fifth ground.    If we examine Art. 1, it
will be found that it merely applies to debts existing, or *actions
pending*, to say the most, and gives no countenance to the idea
that Art. 2, which gives new grounds of attachment, and attaches
new consequences to particular acts, was designed to embrace
acts done before the law was passed.    And since it is demon-
strable that the phrase, "has assigned or is about to assign,"
must be read as though it contained the words, "at the time the
debtor speaks," and not as of the time the Legislature speaks,
it may be safely affirmed that there is no language which ex-
pressly or impliedly refers to assignments preceding the *passage
of the law.*

If the next Legislature should pass a law in the following
words : " The plaintiff in any action commenced or hereafter to be
commenced, may have a writ of *habeas corpus*, &c., to arrest the
defendant, &c., provided he shall first make oath to the following
particular, that the defendant "has assigned" or is about to
assign "his property to defraud his creditors"—would the
court hold that a party might be imprisoned for a fraudulent
assignment made last year, upon the ground that "has assigned,"
used in such a *connection, covered all the past ?*

The court may assume that arrest for debt, like seizure of
property, is but a *remedy*, but still the rule of construction
demands that the intention to attach new consequences to past

acts shall be manifested by unmistakable language. The *pre-sumption* is, that the Legislature never intends to attach *new consequences injurious to the party*, to his *past acts*, and the intention to do so must be palpable. It is not sufficient that certain *words* of the statute may justify the application. The language must be imperative—in other words, we must be able to say that it admits *of no other construction.* Sedgwick Const. Law, 188, *Garrett* v. *Beaumont.*

Throughout the enumeration the statute, whether speaking of conditions or situations, or of acts of the debtor, always refers *to the time the party applies for the writ or makes the oath.* 1st, "*is* a non-resident." Of course this does not mean a non-resident at the time the Act was passed, but a non-resident at the date of the oath. 2d, "has removed or is about to remove," &c.; "conceals or refuses," "*absconds* or *conceals,*" &c.

It is wrong, and so acknowledged universally, for the Legislature to attach new and injurious consequences to acts which did not, at the time of their commission, involve them. Some great and acknowledged general grievance alone can justify such legislation, and then a positive intention thus to deal with the past must be expressed. It is idle to pretend that fraudulent assignments, (for which other remedies existed,) made years and years ago, were in the mind of the Legislature. The Legislature was making a new code for the future, altering and adding to existing laws. They were rectifying the old laws, and not called on to resurrect past misdeeds of the citizens with a view to punish them.

In the court below, it was argued that the construction of the statute was clearly indicated by the words "has assigned," and by the last clause of the Act, at p. 382, Art. 44, which declares the Act shall be liberally construed for the "detection of fraud," &c. This general admonition to the courts cannot be regarded as meaning that the court shall construe it so as to embrace past acts, when the language does not justify it. It is nevertheless to be construed according to its real meaning, and by the established rules of construction.

I think that the decision below was strictly correct, in the reference to the evidence and in the instruction to the jury.

HANDY, J., delivered the opinion of the court:

This was an attachment for debt, sued out under the 5th section of Art. 2 of the attachment law, Rev. Code of 1857, 372, upon the affidavit of the plaintiff that the defendant, Hilzheim, had theretofore disposed of his property or some part of it, and of the property of Anderson & Hilzheim or some part of it, for the purpose of defrauding his creditors, and the creditors of the firm of Hilzheim & Anderson. This affidavit was made and the attachment issued thereon, after the passage of the law in the Rev. Code above referred to. The defendant Hilzheim pleaded to the attachment, traversing the allegation on which it was issued as above stated.

In support of the issue, the plaintiff, on the trial, offered evidence of certain deeds of conveyance made by Hilzheim in April, 1857, which were alleged to be fraudulent as to his creditors. To this evidence ·the defendant objected, on the ground that it was not competent for the plaintiff to prove a fraudulent conveyance by the defendant, made before the Rev. Code, under which the attachment was issued, went into operation, and because the remedy provided in the Rev. Code did not apply to transactions which took place before the 1st November, 1857, when the Code took effect. The objection was sustained, and the evidence excluded; to which the plaintiff excepted.

The only question now presented is, whether the remedy provided in the Rev. Code is applicable to fraudulent dispositions of property made before the Code went into operation.

It is not questioned that the Legislature has the power to create new remedies and to make them applicable to causes of action existing before the passage of the new Act; but it is insisted that the statute in question does not, *in terms,* apply to antecedent transactions, and that the sound rule of construction in such cases is, not to give the statute a retroactive effect, because it would work injustice and oppression to the interests involved.

This is undoubtedly the true rule with reference to statutes impairing rights existing at the time of their passage; or creating new obligations, or imposing new duties, or attaching new dis-

abilities in respect to transactions or considerations already past. Sedgwick on Stat. and Const. Law, 188. But it is different with regard to statutes relating merely to the remedy for wrongs or causes of action existing at the time of their passage. For not only is it settled beyond question that the Legislature has the power to abolish old remedies for causes of action then existing and to prescribe new ones in the same cases, but that such statutes should be construed liberally to advance the remedy. Sedgwick, 360, and cases cited. There can be no injustice or oppression in this ; as there would be in the case of a statute which created a certain right or made an act a wrong, which were not of that character when the statute was passed.

In this case, the statute simply gives the remedy of attachment in a case to which it did not before apply, but in which the plaintiff had another remedy. The language is general and unrestricted, and it must be presumed that the Legislature intended to extend it to all cases, whether then existing or to arise thereafter, embraced within the terms prescribed ; and that it was considered that the pre-existing remedy for the wrong was inadequate. The statute appears to be just and salutary, and to extend the remedy to a class of cases to which the pre-existing remedies were frequently inadequate.

We think that the evidence was improperly excluded upon the ground of objection taken to it; and the judgment must be reversed, and the cause remanded for a new trial.