HARRY GALUSHA, Treasurer for use of Jasper County, Iowa, v. MATHILDE WENDT, Executrix of the estate of AUGUST WENDT, deceased, Appellant.

**Statutes:** RETROACTIVENESS:    *Tax collection.*    Code, section 1374, in effect October 1, 1897, and providing that when property

114  597
116  171
116  457
116  503
p117  84
117  86
117  130

114  597
d119  75
119  325
e119  329
119  366
119  368
119  405
e119  422
h119  423
119  574

114  597
123  316
123  317
123  319

subject to taxation is withheld, overlooked, or from any other reason is not listed or assessed, the county treasurer shall at any time within five years demand of the person by whom it should have been listed, or to whom it should have been assessed, the amount such property should have been taxed, and, on failure to pay the same within a certain time, shall cause an action to be brought therefor, together with a certain penalty, being remedial, is retroactive, and the treasurer may therefor collect taxes on property omitted from assessment for the years 1895, 1896, and 1897, previous to the passage of the act.

*Same.* The statute applies to taxes due when it took effect.

CONSTITUTIONALITY. That a statute is retroactive does not make it unconstitutional save so far as it impairs contractual or vested rights.

*Same.* The procedure authorized by such provision is not unconstitutional, as in violation of the principle of uniformity of taxation.

*Same.* That the penalty provided may not be enforced retrospectively does not render the whole statute unconstitutional.

PENALTY: *How far enforceable.* The penalty authorized by such provision cannot be enforced as to taxes which should have been assessed prior to the taking effect of the present Code.

*Same.* Interest is such a penalty.

*Same.* If the estate owed nothing for taxes when the statute took effect, an obligation on account of something already omitted to be done could not, constitutionally, be created.

*Same.* While it is true that no obligation can be enforced against a taxpayer, without an assessment, the demand by the treasurer amounts to an assessment and the action which he is authorized to bring is for the collection of taxes found due on that assessment. Perry v. Campbell, 110 Iowa, 290, distinguished.

*Notice.* Of such assessments is not required.

LIMITATION OF ACTIONS. There is no inherent limitation as to the time in which the duty of the taxpayer to contribute to the support of the government can thus be determined and enforced.

*Same.* The right of action does not arise until demand is made by the treasurer.

TRIABLE BY JURY. Where an action is brought to collect taxes on omitted property, defendant is entitled to a trial by jury, since the action is not one of equitable cognizance.

AJUDICATION. Since one who fails to state the true value of his property to the assessor and thus induces an under assessment is guilty of such fraud as that he may not rely upon the assessment as an adjudication, the question whether the first assessment is an adjudication, though too low, or whether an inadequate assessment is merely the case of omitted property which may be taxed when discovered, are argued but not decided.

*Same.* But property voluntarily' omitted by the assessor in that, according to custom, he listed it at less than required by law docs not come within the provisions of this statute.

*Evidence.* Under such provision a claim for taxes omitted from assessment for previous years will not be sustained in the absence of evidence as to what property decedent had during those years.

*Same.* That the assets of an estate are so large in one year as to suggest that the amount returned for taxation by decedent in prior years is too small is not enough to show fraud or to show that a part of taxable property was omitted.

*Action against estate of decedent.* Under such provision an action may be brought for taxes that should have been paid by a decedent, as long as such decedent's executor or administrator has funds on hand out of which the 'taxes may be paid. The effect of partial or final distribution is not determined.

*Same.* It is not necessary that claim be filed within the time for filing other claims.

CHAMPERTOUS CONTRACT TO COLLECT TAXES. The fact that the contract between the county and the attorneys engaged to prosecute an action to collect such claim under such provision is champertous is no defense to the action, the question as to the contract's validity being wholly between the county and the attorneys.

*Appeal from Jasper District Court.*—HON. A. R. DEWEY, Judge.

SATURDAY, OCTOBER 12, 1901.

ACTION by plaintiff, as treasurer of Jasper county, to recover for the use of said county against defendant, as executrix of the estate of one August Wendt, various sums of money alleged to be due as taxes on personal property omitted from assessment for the years 1895, 1896, and 1897. De-

fendant put in issue the right of plaintiff to maintain the action, and the truth of the allegations of fact in plaintiff's petition. The court tried the action without a jury, denying defendant's demand for a jury trial. It appeared in evidence that said August Wendt died in July, 1896, leaving a will, which was duly probated, and under which defendant was appointed executrix in October following. The inventory of the estate and the reports of the executrix, which were introduced in evidence, showed the value of the estate, consisting of cash, notes, and accounts. A commissioner was appointed by the court to determine, from the evidence furnished by the inventory and reports above referred to, what the taxable value of the personal property of said August Wendt was which should have been assessed for taxation in the years 1895 and 1896, and what the value of his estate was which should have been assessed for taxation in 1897. The commissioner was directed also to find the amount of indebtedness for each of these years which should be deducted from the moneys and credits in determining their assessable value. It appears from the evidence that during these years personal property was assessed in Jasper county at 50 per cent. of its real value, and the commissioner reported on this basis the assessable value for each of the years and deducted therefrom the amount shown by the assessment books to have been assessed to August Wendt and his estate for said years. The number of mills on the dollar of the levy in Jasper county for each of the said years having been shown by the evidence, the amount of the tax which should have been paid for each year was thus determined, and interest computed thereon from the date when such tax should have been paid, and it was thus ascertained that $1,977.68 was due as taxes, and judgment was entered for that amount, the sum due for each year being separately estimated. Such other facts as are necessary to the determination of particular points passed on are stated in the opinion. Defendant appeals.—*Reversed.*

*Harrah & Myers* for appellant.

*E. J. Salmon* and *Graham & Morgan* for appellee.*

McCLAIN, J.—This action is brought under a section of the Code which reads as follows: "Sec. 1374. When property subject to taxation is withheld, overlooked, or from any other reason is not listed or assessed, the county treasurer shall, when apprised thereof, at any time within five years from the date at which such assessment should have been made, demand of the person, firm, corporation or other party by whom the same should have been listed, or to whom it should have been assessed or of the administrator thereof, the amount the property should have been taxed in each y r the same was so withheld or overlooked and not listed and assessed, together with six per cent. interest thereon from the time the taxes would have become due and payable had such property been listed and assessed, and upon failure to pay such sum within thirty days, with all accrued interest, he shall cause an action to be brought in the name of the treasurer for the use of the proper county, to be prosecuted by the county attorney, or such other person as the board of supervisors may appoint, and when such property has been fraudulently withheld from assessment, there shall be added to the sum found to be due a penalty of fifty per cent. on the amount, which shall be included in the judgment. The amount thus recovered shall be by the treasurer apportioned ratably as the taxes would have been if they had been paid according to law." This section is found first in the Code of 1897, which took effect on the first day of October of that year, and the controversy is limited to taxes which it is claimed should have been assessed and paid under the statutes in force before the present Code took effect.

* An argument for appellant was also filed by Carr & Parker and Soper, Allen and Alexander, attorneys in a case tried in Palo Alto county involving the same questions arising on this appeal.

I.    The first question is as to whether the provisions of the section above quoted are applicable to taxes for previous years, or, more specifically, whether under that section the treasurer can proceed to collect taxes on property omitted from assessment for such previous years.    Appellant contends that the language of the section does not make it retroactive, and that it cannot be so construed as to have a retroactive effect.    There can be no controversy about the proposition that the courts will construe a statute as prospective only, in the absence of language indicating an intention that it shall be retrospective. *Bartruff v. Remey,* 15 Iowa, 257; *Polk County v. Hierb,* 37 Iowa, 361; *McIntosh v. Kilbourne,* 37 Iowa, 420; *Payne v. Railroad Co.,* 44 Iowa, 436, 438; *Starr v. City of Burlington,* 45 Iowa, 89, 91; *People v. Columbia Co. Sup'rs,* 43 N. Y. 130; *Inhabitants of Town of Goshen v. Inhabitants of Town of Stonington,* 4 Conn. 209 (10 Am. Dec. 121); 1 Kent, Commentaries, 455.    The language of the statute is presumed to refer to the date of its taking effect.    *City of Davenport v. Davenport & St. P. R. R. Co.,* 37 Iowa, 624.    But a well-settled exception to this rule of construction is recognized when the statute is remedial.    *Haskel v. City of Burlington,* 30 Iowa, 232; *Kossuth County v. Wallace,* 60 Iowa, 508; *People v. Essex Co. Sup'rs,* 70 N. Y. 228, 236; *People v. Spicer,* 99 N. Y. 225 (1 N. E. Rep. 680); *Green v. Anderson,* 39 Miss. 359; *Klaus v. City of Green Bay,* 34 Wis. 628; 1 Kent, Commentaries, 455, and note in 14th Ed. If the statute refers to an existing condition, it is applicable, although the condition is one which has been in existence before the taking effect of the statute, and the construction gives it, therefore, a retroactive effect, notwithstanding the language of the statute is prospective only.    *Plum v. City of Fond du Lac,* 51 Wis. 393 (8 N. W. Rep. 283); *State v. Cunningham,* 88 Wis. 81 (57 N. W. Rep. 1119, 59 N. W. Rep. 503); *State v. Duff,* 80 Wis. 13 (49 N. W. Rep. 23); *Sommers v. Johnson,* 4 Vt. 278 (24 Am. Dec. 604); *Alston v. Alston,* 114 Iowa,

29.   In determining the construction of a statute, as to whether it shall be given a retroactive effect, the court should consider whether if construed retroactively it will be unconstitutional, as impairing contract obligations or vested rights. *Duncombe v. Prindle,* 12 Iowa, 1, 8; *Thompson v. Read,* 41 Iowa, 48; *Society v. Wheeler,* 2 Gall. 105 (Fed. Cas. No. 13,156); *Twenty Per Cent. Cases,* 20 Wall. 179 (22 L. Ed. 339).   Of course, unless some provision of the state constitution is violated, the fact that a statute is made retroactive by express terms or by interpretation will not render it unconstitutional, save so far as contractual or vested rights are impaired. *Baltimore & S. Railroad Co. v. Nesbit,* 10 How. 395, 401 (13 L. Ed. 469); *Whipple v. Farrar,* 3 Mich. 436 (64 Am. Dec. 99); *State v. Squires,* 26 Iowa, 340; *Haskel v. City of Burlington,* 30 Iowa, 232; *Edworthy v. Association,* 114 Iowa, 220; *Bemis v. Clark,* 11 Pick. 452; *Wilbur v. Gilmore,* 21 Pick. 250; *Biddle v. Starr,* 9 Pa. 461, 467; *Cairo & F. R. Co. v. Hect,* 95 U. S. 168 (24 L. Ed. 423); *Tennessee v. Sneed,* 96 U. S. 69 (24 L. Ed. 610).   The cases already cited furnish pertinent illustrations of the proposition that a remedial statute will be construed as applicable to a pre-existing and continuing condition, and that proposition has been frequently applied to statutes providing a new remedy for the enforcement of taxes already due, or for assessing property which has been omitted from taxation. *State v. Pors,* 107 Wis. 420 (83 N. W. Rep. 706, 51 L. R. A. 917); *State v. Myers,* 52 Wis. 628 (9 N. W. Rep. 777); *State v. Baldwin,* 62 Minn. 518, 522 (65 N. W. Rep. 80); *Gager v. Prout,* 48 Ohio St. 89 (26 N. E. Rep. 1012); *Sellars v. Barrett,* 185 Ill. 466 (57 N. E. Rep. 422); *Biggins v. People,* 106 Ill. 270. Irregularities or omissions in proceedings to enforce the payment of taxes may be corrected. Wade, Retroactive Laws, sections 252, 253.   And the state may impose taxes for previous years to cure any such irregularities or omissions.   *Carpenter v. Pennsyl-*

*vania,* 17 How. 456 (15 L. Ed. 127); *Tallman v. City of Janesville,* 17 Wis. 71; *Cross v. City of Milwaukee,* 19 Wis. 509; *De Pauw v. City of New Albany,* 22 Ind. 204; *Olmstead v. Barber,* 31 Minn. 256 (17 N. W. Rep. 473, 944); *Hall v. Commissioners,* 177 Mass. 434 (59 N. E. Rep. 68). Statutes of this kind are not unconstitutional. They impair no contractual or property rights. *People v. Seymour,* 16 Cal. 332 (76 Am. Dec. 521). If the provision of our Code which we are now considering relates to the collection of taxes already due, then it should, without question, be construed as applicable to taxes which were due when the Code took effect. But appellant insists that there were no taxes due from the estate of August Wendt for years prior to his death, because there had been no assessment on the property now alleged to have been omitted, and that therefore to give the Code provision a retroactive effect would be unconstitutional, because the result would be to simply create an obligation based on past and not existing facts. *Klaus v. City of Green Bay,* 34 Wis. 629. It is plain enough that if when the Code went into effect the estate owed nothing to the county in the way of taxes, then an obligation of the estate on account of something already omitted to be done could not be constitutionally created. We think, however, that this objection to the Code provision is based on a misconception of its purpose and effect. It is true that assessment is a step essential to the validity of a tax. *Allen v. Armstrong,* 16 Iowa, 508; *McCready v. Sexton,* 29 Iowa, 356, 366; *Powers v. Fuller,* 30 Iowa, 476; *People v. Weaver,* 100 U. S. 539, 545 (25 L. Ed. 705); Cooley, Taxation, section 259. Without an assessment there is no debt from the taxpayer, and there is no obligation on his part which can be enforced in an action. *Worthington v. Whitman,* 67 Iowa, 190; *Appanoose County v. Vermilion,* 70 Iowa, 365; *Adams v. Tonella,* 70 Miss. 701 (14 South Rep. 17, 22 L. R. A. 346); *Marsh v. Supervisors,* 42 Wis, 502. The general duty

of the taxpayer to be assessed in proportion to the value of his property in bearing the expenses of government cannot, by simple demand of a lump sum, be converted into a money obligation. A court cannot be made an assessment board. *Frost v. Board,* 114 Iowa, 103. The present Code requires the taxpayer to assist the assessor by specifically listing the various items of property required to be entered for assessment, and to make oath as to the correctness of the list thus returned. Code, sections 1352, 1354, 1355, 1360, 1361. And these provisions were substantially found in the statutes in force prior to the adoption of the present Code, though not in such specific terms. But the failure of the property owner to return his property for assessment, although subjecting him to various penalties, did not obviate the necessity of some assessment as a basis for the collection of the taxes on property omitted. It is not necessary however, that such assessment be made by the same assessor or board vested with authority to make the original assessment. The assessor may add property not returned by the property owner (Code, section 1357) ; and the board of review may add to the assessment rolls any taxable property not included therein (Code, section 1370) ; but, if both the assessor and the board fail to include property subject to assessment, the auditor may correct such error in the assessment list (Code, section 1385), and in case of real property the omission may be corrected by the treasurer after the list comes into his hands (Code, section 1389). And these provisions were contained substantially in their present form in the statutes in force prior to the taking effect of the present Code. Such an assessment by the auditor or treasurer is valid, and a tax based thereon could under former statutory provisions be enforced as other taxes. *Milwaukee & St. P. R. Co., v. Kossuth County,* 41 Iowa, 57 ; *Robb v. Robinson,* 66 Iowa, 500 ; *Cedar Rapids & M. R. R. Co. v. Carroll County,* 41 Iowa, 153, 174. And this power to assess omitted property might be exercised after the time for making the levy. *Parker v.*

*Van Steenburg*, 68 Iowa, 174. The effect of the new provision in the Code of 1897 which we are now considering is to authorize the treasurer to demand the amount of the tax which should have been collected on account of omitted property, and in determining the amount of such tax he will necessarily exercise the authority which might have been exercised by the assessor and board of review or the auditor. The assessment is made by him, and the action which he is authorized to bring is for the collection of taxes found to be due on such an assessment. There is no inherent limitation as to the time within which the duty of the taxpayer to contribute to the support of the government can thus be determined and enforced. *County of Brown v. Winona & St. P. Land Co.*, 38 Minn. 397 (37 N. W. Rep. 949); *County of Redwood v. Winona & St. P. Land Co.*, 40 Minn. 512 (41 N. W. Rep. 465); same case under another name [*State v. Certain Lands in Redwood County*,] 40 Minn. 512 (42 N. W. Rep. 474). The government has the same right to enforce the duty of the taxpayer to contribute to its support on account of omitted property that it has to enforce the payment of taxes previously determined. *People v. Seymour*, 16 Cal. 332, 344 (76 Am. Dec. 521). With this construction the statute is not retroactive in such a sense as to require us to hold it unconstitutional on the ground that it creates an obligation based on past as distinct from present facts. *Sturges v. Carter*, 114 U. S. 511 (5 Sup. Ct. Rep. 1014, 29 L. Ed. 240). In answer to the appellant's contention that this assessment by the treasurer lacked the essential element of notice to the taxpayer and an opportunity to be heard, it is enough to say that the whole proceeding is predicated upon the failure of the taxpayer to return his property for assessment as required by law, and avail himself of the right to have it shown in the regular way in a proceeding of which he would have had notice, and in which he would have had the opportunity to be heard. The legislature has recog-

nized the propriety of giving notice to the taxpayer, even in this proceeding, by subsequent legislation. See Acts Twenty-eighth General Assembly, chapter 50. But inasmuch as the action of the treasurer is not conclusive, and the duty on which his demand is based can be shown to the court in which the enforcement of the demand is sought, we do not think that the taxpayer is deprived of any constitutional right. *County of Redwood v. Winona & St. P. Land Co., supra; Winona & St. P. Land Co. v. Minnesota,* 159 U. S. 526, 528 (16 Sup. Ct. Rep. 83, 40 L. Ed. 247); *Weyerhauser v. Minnesota,* 176 U. S. 550 (20 Sup. Ct. Rep. 485, 44 L. Ed. 583). We have held in regard to the collateral inheritance tax that the bringing of suit was not a substitute for assessment, but in such a case there had been no omission on the part of the person who should return the property for assessment. *Ferry v. Campbell,* 110 Iowa, 290.

II. In answer to the objection that the procedure authorized by the statutory provision under consideration is unconstitutional because it violates the principle of uniformity of taxation, it is enough to say that it is a part of a uniform system applicable to all taxpayers, and by which their obligations are to be determined. It is true that unequal taxation is not due process of law, and that by it the taxpayer is deprived of the equal protection of the law (*Fay v. City of Springfield,* [C. C.] 94 Fed. Rep. 409, 421), and that it is not competent for the legislature to introduce as to omitted property a procedure for assessment and enforcement of taxes wholly distinct from and independent of the original procedure provided by the general statutes regarding taxation (*Adams v. Tonella,* 70 Miss. 701 (14 South. Rep. 17, 22 L. R. A. 346). But, as has already been indicated, the provision which we are considering is harmonious with the methods of assessment and enforcement long recognized in our taxing system. The amount of the tax having been ascertained in a constitutional manner, the enforcement of the tax by action is,

simply the introduction of another remedy, which is not in itself unconstitutional. It is uniformity of burden, and not identity of method of enforcement, which is required by constitutional principles. *Winona & St. P. Land Co. v. Minnesota,* 159 U. S. 526 (16 Sup. Ct. Rep. 83, 40 L. Ed. 247); *Sawyer v. Dooley,* 21 Nev. 390 (32 Pac. Rep. 437).

III. Appellant insists that the claim of the county is barred by limitation; but it already has been said that there is no limitation, except by express statute, of the right of the state to enforce the duty of contributing ratably to the support of the government, and, as to the right of action itself, it did not arise until demand was made by the treasurer. Inasmuch as the statute itself authorizes an action againt an executor or administrator, there is no necessity for filing the claim against the estate within the time fixed for filing other claims; and so long as the executor or administrator has funds on hand out of which taxes against the estate of decedent may be paid, no doubt the right to make demand and bring action continues. We need not determine at this time the effect on such right resulting from a partial or final distribution of assets. The record in this case is not sufficient to present any such question.

IV. It seems to be conceded that the penalty authorized by the statute cannot be enforced with reference to taxes which should have been assessed prior to the taking effect of the present Code. To enforce such a penal provision retrospectively would be unconstitutional. *Cummings v. Missouri,* 4 Wall. 277, 325(18 L. Ed. 356); *County of Redwood v. Winona & St. P. Land Co.,* 40 Minn. 512 (41 N. W. Rep. 465); *County of Brown* v. *Winona & St. P. Land Co.,* 39 Minn, 380 (40 N. W. Rep. 166); *Bartruff v. Remey,* 15 Iowa, 257. But the penalty may be enforced as to property omitted after the taking effect of the Code, and the whole section is not rendered unconstitutional by the fact that the provision as to

the penalty cannot be applied retrospectively. *Gager v. Prout,* 48 Ohio St, 89 (26 N. E. Rep. 1013). The lower court, while not imposing the 50 per cent. penalty, did compute interest from the time when the taxes on the omitted property, if duly assessed, would have been payable. This interest, we think, is in the nature of a penalty, for the amount of the taxes to be paid was unliquidated until the treasurer made the computation and demanded payment. Interest was therefore improperly included in the amount of the recovery.

V.   The assessor in 1895 and in 1896 entered on the assessment books, as against August Wendt, an amount which he, as assessor, found to be the total of moneys and credits less the indebtedness which the deceased had a right to deduct from the total amount of such moneys and credits, and the same thing was done in 1897, in assessing the moneys and credits of the estate. The appellant contends that these entries by the assessor, not being objected to or corrected within the time and manner provided for correcting errors in assessments, constitute an adjudication which cannot be collaterally attacked. He insists that assesors are *quasi* judicial officers, and that the assessment roll, when finally completed has the effect of a judgment.   Some of the authorities cited, while tending to support this proposition, are only indirectly applicable to the case before us. *Barbyte v. Shepherd,* 35 N. Y. 238; *Buffalo & S. L. R. Co. v. Supr's,* 48 N. Y. 95, 99; *Moss v. Cummings,* 44 Mich. 359 (6 N. W. Rep. 843); *Fuller v. Gould,* 20 Vt. 643; Cooley, Taxation (2d Ed.), 219; 2 Freeman, Judgments (Black's Ed.), section 532. And see *Ryan v. Varga,* 37 Iowa, 78; *Polk County v. Sherman,* 99 Iowa, 60, 65; *Crawford v. Polk County,* 112 Iowa, 118. In *Allwood v. Cowen,* 111 Ill. 481, it is specifically decided that such a case is not one of omitted property, within a section of the revenue act of

Illinois providing for the listing and assessing by the assessor, when discovered, of any property which shall have been omitted in the assessment of any year or number of years; and a distinction is strongly insisted upon between a case where the assessor, in fixing the total amount of moneys and credits made up of different items, less debts, which may also consist of different items, fixes the amount to be assessed at less than the true amount, and the case where the owner omits to list the whole number of articles of personal property,—as for instance, the whole number of horses he may own. It is said that such a statute gives the assessor "no authority in a subsequent year to raise the assessed value of any article of personal property which had been once fixed in a former year," nor "to raise or increase the amount of credits liable to taxation after the same has been ascertained in a former year by his predecessor." This court, however, in *Royce v. Jenney,* 50 Iowa, 676, in determining the powers of the county board of equalization, under section 832, 833, of the Code of 1873, authorizing it to increase or diminish the valuation of property in the county as determined by the township boards, held that it had no right to add to the valuation of the moneys and credits of a property owner, on the ground that this was not the equalization of valuation, but an addition of taxable property; and Chief Justice Beck, in the opinion of the court, uses this language: "If plaintiff had been assessed upon 750 sheep and lambs, instead of $750, we would understand that the number used indicated the number of animals owned by him. So the seven hundred and fifty applied in this case to moneys and credits indicates as a description the quantity of moneys and credits taxed. The fact that seven hundred and fifty dollars of moneys and credits are valued at seven hundred and fifty dollars does not change the meaning of the language of the assessment. * * * It cannot be claimed that an assessment on seven hundred and fifty sheep and lambs could be increased by

the county board of equalization to one thousand five hundred animals of the same description. It is equally clear that an assessment on seven hundred and fifty dollars of moneys and credits cannot be doubled, as the board attempted to do in this case." It may be claimed that this language indicates the view of the court that an omission of a certain number of dollars of valuation in assessing moneys and credits is the same thing as the omission of so many animals in fixing the property owner's taxable property, but it is apparent that the question before the court was quite a different one from that which we are now considering. There is some authority for the position that in case of gross undervaluation the state may reassess the property and collect taxes on the real value thereof [*State v. Weyerhauser,* 68 Minn. 353 (71 N. W. Rep. 265); *Weyerhaueser v. Minnesota,* 176 U. S. 550 (20 Sup. Ct. Rep. 485, 44 L. Ed. 583)]; the right to do so being put on the ground that such gross undervaluation constitutes or shows fraud on the part of the officer. But we cannot assent to the suggestion made in *Railroad Co. v. Morrow,* 87 Tenn. 406, 415 (11 S. W. Rep. 348, 2 L. R. A. 853), that the taxpayer will know that he is free from danger of reassessment for previous years when he has paid taxes on his property for those years according to its value. On no question is there opportunity for so great diversity of honest judgment as on the question of value. When the property owner has once honestly returned his property for assessment, and been assessed on such property, he should not be reassessed for the same year on that property merely because another officer may think the first assessment was inadequate. We do not deem it essential, however, to determine whether the valuation by an assessor of moneys and credits as a basis for taxation is an adjudication, on the one hand, such as to prevent a subsequent taxation of any omitted portion of the true value of the property owner's moneys and credits, or whether, on the other hand, such a

case is that of the omission of property which may subsequently be taxed when discovered; for if, by reason of a failure of the property owner to state to the assessor the true value of his moneys and credits, the assessor is induced to assess that item of property at less than its real value, there is such fraud on the part of the property owner as would in any event vitiate the assessment and deprive it of any binding force. There is no question but that the property owner would be precluded under any theory from relying upon an adjudication by the assessor which had been procured by his own fraudulent concealment; and where there is evidence of such concealment, which would be sufficiently established by showing his failure to return to the assessor the true value of his moneys and credits, the effect of the prior assessments as an adjudication is gone.

14      On the other hand, it is equally true that there cannot be an additional assessment for moneys and credits omitted in the prior assessment without some evidence that the property owner had at the time of the prior assessment moneys and credits not returned to or valued by the assessor. Under either theory, failure to assess moneys and credits at their true value must be made out, to justify a reassessment; and, when it is shown that the property owner failed to return the full value of his moneys and credits, a reassessment for the value omitted may be made. In the case before us it appears that August Wendt, who returned his moneys and credits in 1895 and 1896 for taxation at some valuation, is dead, and the assessor who put a valuation on them is also dead, and the only evidence that such valuation was inadequate is that in 1897 the executrix of Wendt is found in the possession of total assets of such value as to suggest that he had more property in 1895 and 1896 than was returned to the assessor. We cannot tell from the record how the commissioner knew that property of Wendt which is now in the form of assets of his estate existed then in the shape of moneys and credits. The most

plausible suggestion in support of the judgment of the lower court is that many notes found in the hands of the executrix were notes which appeared to have belonged to Wendt in previous years. But, even if this fact appeared on the record—and it does not appear—it would not obviate the objection. Notes are taxable as credits at their actual value, and, even though their face value may be presumed to be their actual value, yet this is not conclusive, and the actual value may be otherwise, and may vary from year to year. It is from the aggregate amount of the actual value of moneys and credits, including notes, etc., that the gross amount of all debts is to be deducted. See Code, section 1311, substantially embodying the previous statutory provisions on the subject. The assessor in 1895, and again in 1896, found the value of the moneys and credits which August Wendt then had, and ascertained the amount of his indebtedness. This the assessor must be presumed to have done according to his best judgment, and after exercising his authority with reference to the discovery of values vested in him by law. A mere surmise as to what moneys and credits Wendt had in 1895 and 1896, based on the fact that in 1897 his estate is found to be much larger than would be indicated by his previous assessments of moneys and credits, is not enough, on the one hand, to show fraud, nor, on the other, to show the omission of a portion of the true valuation of such taxable property. To subject a man to the anticipation that after his death, when all possibility of explanation is gone, when all evidence of the debts which he has extinguished has disappeared, when the sources from which he derived the moneys and credits which he may leave are beyond reach, his estate may be called upon to pay taxes for four preceding years on the basis of what he may be able to leave for his family regardless of the presumption arising from the assessments actually made from year to year by duly constituted officers, is to add an additional horror to the fears

of approaching dissolution. We think that, to sustain a claim .for taxes on property omitted from assessments for previous years, there must be some evidence as to what property the taxpayer had during those years. Another suggestion occurs to us as pertinent here. Prior to the present Code there was no authority whatever for assessing property at less than its actual value. Nevertheless it is a well-known fact that assessments even of moneys and credits were actually made all over the state at less than their real value. See report of Revenue Commission, 1893, p. 8. In this case it appears that such property was assessed for the years in question in Jasper county at 50 per cent. of its actual value. If these assessments are not presumptively correct, in the absence of any showing of fraud or failure to return moneys and credits at their real value, but may be revised now by assessing as omitted property the real value of the moneys and credits in excess of the valuation fixed by the assessors and boards of review, then we do not see why any taxpayer may not now be asked to pay taxes on the percentage of his moneys and credits omitted from assessment without lawful authority prior to the taking effect of the present Code, and' within the five-year limit fixed by the statutory provisions which' we are now considering, or within any longer period which the legislature may hereafter fix upon, notwithstanding such percentage in valuation was voluntarily omitted by the assessor in accordance with the practice in any particular county. Under the theory adopted by the trial court, this omitted percentage would be omitted property, although there was no fraud on the part of the tax payer, and no concealment of the true amount of his moneys and credits. This danger may be imaginary, and' in fact the trial court in this case did not include this omitted percentage, but the possibility illustrates the danger of overhauling the value of moneys and credits in this way in the absence of proof of concealment or failure to return moneys and credits at their true value. The above reasoning is

equally applicable to the valuation of the moneys and credits of the Wendt estate in 1897. The assessor fixed a valuation upon the moneys and credits of the estate for that year. It appears affirmatively that he had all the information which the court now has with reference to such valuation. If the taxing officers do not perform their duty, they are liable to severe penalties, and it is the business of the electors to see that men are selected who will perform this duty justly and fearlessly; but we think that it is not open to the court to impose taxes for previous years on the mere assumption that moneys and credits were omitted from taxation, without any evidence that the action of the taxing officers for those years was erroneous as to specific classes of property.

VI. Appellant interposes to this action the claim that it was brought without legal authority, because the attorneys who made the investigation as to the omitted property, and who prosecuted the suit in the name of the county, were acting under a contract by which they were to receive as compensation 50 per cent. of the taxes collected by the county as a result of their efforts, and were to make the investigation at their own expense. But the validity of this contract is not now before us. The county may employ agents other than the county attorney to prosecute claims for the county. *Denison v. Crawford County,* 48 Iowa, 211; *Wilhelm v. Cedar County,* 50 Iowa, 254. This suit was brought and prosecuted by the county. Even though the contract between the county and its attorneys is champertous, that fact is no defense to the action itself. The question as to the validity of the contract is one wholly between the county and the attorneys. *Small v. Railroad Co.,* 55 Iowa, 582; *Vimont v. Railroad Co.,* 69 Iowa, 296; *Burns v. Scott,* 117 U. S. 582 (6 Sup. Ct. Rep. 865, 29 L. Ed. 991); *Pennsylvania Co. v. Lombardo,* 49 Ohio St., 1 (29 N. E. 573, 14 L. R. A. 785).

VII. Appellant demanded' in the lower court trial by jury, which was refused. This was error. The action is at law for the recovering of a sum of money. There is no element of accounting or other fact bringing the case within any recognized branch of equitable jurisdiction. Mere intricacy of the calculations necessary to the determination of the amount of plaintiff's recovery will not justify the trial court in treating the case as one of equitable cognizance. *District Tp. v. Bulles,* 69 Iowa, 525 ; *McMartin v. Bingham,* 27 Iowa, 234. The action does not involve the examination of accounts, as did *Burt v. Harrah,* 65 Iowa, 643, and *Land Co. v. Walker,* 50 Iowa, 376. Moreover, the action, whatever its nature, was brought and prosecuted as a law action, and the court was not justified in hearing evidence without calling a jury, as demanded by appellant.

We have discussed at length the many questions involved in this case, because their decision is important, not only in view of the new trial which will follow the reversal but also in view of the general importance of making clear, if possible, the correct interpretation of this statute, and the nature of the proceedings authorized by it.—RE- VERSED.