PEOPLE'S SAV. BANK v. LAYMAN, County Treasurer.

DES MOINES SAV. BANK v. SAME.

(Circuit Court, S. D. Iowa, C. D. February 4, 1905.)

Nos. 2,406, 2,407.

1. TAXATION—ASSESSMENT OF SHARES OF STOCK OF SAVINGS BANKS—ASSETS INVESTED IN GOVERNMENT BONDS.

In assessing the property of a savings bank under Code Iowa, § 1322, which provides that the assessment shall be made on its shares of stock, the fact that a part of the bank's assets which go to make up the value of the shares consists of bonds of the United States, which are not taxable, does not entitle the bank to a deduction of such amount.

2. SAME—POWER TO MAKE REASSESSMENT.

Under the law of Iowa, where an assessor has made an assessment without fraud on his part or concealment on the part of the property owner, and no steps have been taken to review such assessment in the manner provided by statute, through the board of equalization and the courts, it becomes a finality; and after the taxes have been levied thereon and paid the property cannot be reassessed for the same year because the assessor, through a mistake of law, undervalued it.

3. SAME—SUIT TO ENJOIN ILLEGAL ASSESSMENT—EQUITY JURISDICTION.

A federal court of equity has jurisdiction to enjoin an illegal assessment where the taxes levied thereon will constitute a cloud on the title to property, and the court has otherwise jurisdiction of the suit.

4. FEDERAL COURTS—JURISDICTION—FEDERAL QUESTION.

A, federal court has jurisdiction of a suit to enjoin an assessment where a question involved is the right of the taxpayer to an exemption on account of United States bonds owned by him, regardless of the citizenship of the parties, and, having such jurisdiction, it may adjudicate other questions involved in the case, although it decides the federal question adversely to complainant.

[Ed. Note.—Jurisdiction of federal courts in suits involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.]

## In Equity.

The case No. 2,406 will be first considered.

The complainant is a corporation organized under the laws of Iowa as a savings bank, and located at Des Moines. The defendant is the county treasurer. The bill alleges and the evidence shows that the assessments made by the assessor were for the years as follows: For the year 1898, $62,320; for the year 1899, $13,250; for the year 1900, $40,000; for the year 1901, $56,297. Within the time fixed by law the taxes were levied on said assessments, and in due time paid. The bill alleges that the assessments were made by the assessor on all the property of the bank, after full disclosure of its assets, and was not an assessment on the value of the shares of stock of the bank. December 15, 1902, the treasurer of the county served upon the bank a notice to the effect that it had been discovered that there was withheld, overlooked, or from some cause omitted from the assessment and tax list personal property of the bank as follows: For the year 1898, $35,505; for the year 1899, $74,594; for the year 1900, $55,432; for the year 1901, $59,341. And the treasurer notified the bank to appear and show cause why said property thus omitted as claimed should not be added to the assessment and taxes collected thereon. The bill alleges and the evidence shows that on the day covered by the assessments the bank held and owned bonds of the United States of the values as follows: For the year 1898, $28,656.25; for the year 1899, $80,600; for the year 1900, $47,800; for the year 1901, $55,000. And it is

alleged that such bonds, and the value thereof, was the only property omitted for said years from the assessments and taxation, and on which taxes were not timely paid, being the said United States bonds, a fact known by the assessor at the time he made the assessments. The complainant owns real estate in the county, on which said invalid taxes, if levied, will become an apparent lien, and will create a cloud on the title thereto. An injunction against said proposed assessments is prayed. A restraining order was issued, to remain in force until a hearing.

The answer alleges that by succession in office Charles H. Murrow is now treasurer of the county, and is made the defendant. It admits the assessment as alleged for the one year, but at the time of filing the answer is not advised as to the amounts for the other years. But denial is made that the said assessments for said years was the value of all of the personal property of complainants, or that it paid taxes on all of the personal property it owned for said years. It admits that the bank during said years owned real estate assessed, and on which it paid taxes. The answer also admits that the assessments for said four years was in form and in fact an assessment of the value of the personal property of the bank, and that neither of said four assessments was in form nor in fact an assessment of the value of the shares of the capital stock of the bank, but that in all of said four years the taxes based and collected were against the bank, on account of its property, and in collecting the taxes the same was treated, and in fact levied, collected, and paid, by the bank, as taxed against the bank, and not as against the shares of its capital stock. Defendant denies that it is his purpose to assess and collect taxes from the bank on account of any United States bonds. The evidence shows that for each of the four years the assessor handed the bank a printed form, with blanks, to be filled out and verified, as was done with other similar corporations. The forms thus filled out by the bank officer for the different years was as follows, viz.:

1898.

| | | |
|---|---:|---:|
| Capital and surplus | $100,000 | 00 |
| Undivided profits | 634 | 23 |
| United States bonds | 25,000 | 00 |
| Real estate otherwise taxed | 4,700 | 00 |
| Balance after deducting the bonds and real estate | 70,934 | 23 |
| Assessment for the year | 62,320 | 00 |

1899.

| | | |
|---|---:|---:|
| Capital and surplus | $100,000 | 00 |
| Profits | 4,658 | 74 |
| United States bonds | 80,600 | 00 |
| Real estate | 15,300 | 00 |
| Balance | 8,758 | 74 |
| Assessment for the year | 13,250 | 00 |

1900.

| | | |
|---|---:|---:|
| Capital and surplus | $100,000 | 00 |
| Profits | 6,928 | 62 |
| United States bonds | 47,800 | 00 |
| Real estate | 12,300 | 00 |
| Balance | 46,828 | 62 |
| Assessment for the year | 40,000 | 00 |

1901.

| | | |
|---|---:|---:|
| Capital and surplus | $100,000 | 00 |
| Profits | 20,432 | 74 |
| United States bonds | 55,000 | 00 |
| Real estate | 12,000 | 00 |
| Balance | 53,432 | 74 |
| Assessment for year | 56,297 | 00 |

Of course, it is not claimed that the cash on hand and bills receivable were taxable, because they were offset by amounts due depositors. The real estate was properly deducted, because that was otherwise assessed. If the

bonds were exempt, then we have the following as the result of the assessor, the reviewing board, and the taxing authorities:

For the year 1898, underassessed.............................. $8,614 23
For the year 1900, underassessed..............................  6,828 62
For the year 1899, overassessed...............................  4,491 26
For the year 1901, overassessed...............................  2,864 26

And, if the bonds are not to be deducted, then we have that the bank was not assessed as high as could have been, as follows:

For the year 1898.......................................... $33,614 23
For the year 1899.......................................... 76,108 74
For the year 1900.......................................... 54,628 62
For the year 1901.......................................... 52,135 74

The assessments demanded by the county treasurer, in round numbers, are the same as the bonds held by the bank, the precise statement for the four years being as follows:

Additional assessments demanded............................. $224,872
Aggregate of U. S. Bonds...................................... 212,056

So that it can be stated as a fact that the discrepancy contended for is the amount of the bonds.

The case of the Des Moines Savings Bank as to pleadings and evidence, excepting as to the figures given, is in all respects like the other case. I shall not set out the figures in detail. Suffice it to say that, after deducting real estate and the United States bonds, the net worth of the bank was practically for each of the four years equal to the assessment for taxation. And, as with all property, each of the banks paid taxes on 25 per cent. of the assessment.

N. T. Guernsey and George F. Henry, for complainants.
Howard Clark, for defendant.

McPHERSON, District Judge (after stating the facts). From the foregoing statement of facts, two questions arise for determination: (1) Was the bank entitled to have deducted the amount of United States bonds from the net worth of the bank, in fixing the assessment? (2) If the bonds were not properly deducted, then after the bank was assessed and the taxes paid can the treasurer now add to the assessment?

That the Constitution is the supreme law of the land need only be stated. And that the government has the power to borrow money by issuing its bonds and selling them is denied by no one. And that the bonds cannot be taxed by any state, county, or municipality is agreed to by all, and by none with more emphasis than by counsel for defendants herein. Men often deny this, for the reason, as it appears to them, that it allows the bondholder to escape taxation. But all informed men well know that the power to tax is the power to destroy, and if a state or any subdivision thereof could tax United States bonds then the power of the government to borrow money would either be destroyed or impaired, accordingly as the rate of taxation would be fixed. In any event, the ability of the government to borrow money at a nominal rate of interest is because of three things, all of which are controlling: (1) The length of time before the bonds mature. (2) The integrity of the government in observing its contracts. It never repudiates. It never flunks, as do so many states, political, municipal,

and other corporations. It pays its debts as agreed. (3) The fact that its bonds are never taxed. The government is greater than any state. Its implied powers, as well as its express powers, are supreme. This is not at all times, with all people, popular, but it is at all times patriotic, and the recognized law of the country. All of which Mr. Clark, counsel for the county treasurer, indorses. But he contends that the question is not in the case, and whether it is in the case is now to be considered.

Section 1322 of the Iowa Code provides that all shares of stock of national banks shall be assessed to the individual stockholders at the place where the bank is located; but shares of stock of state and savings banks and loan and trust companies shall be assessed to such banks and loan and trust companies, and not to the individual stockholders. And the Iowa Supreme Court four times within the last two years, and once within the last few weeks, has held that the general exemption from state taxation with which the bonds of the United States are clothed does not entitle the bank to deduct the amount of such bonds from the value of the shares of their stock which are assessed to it for the purpose of taxation under Code § 1322. Savings Bank v. Burlington, 118 Iowa, 84, 91 N. W. 829; National State Bank v. Burlington, 119 Iowa, 696, 94 N. W. 234; National Bank v. Independence, 123 Iowa, 482, 99 N. W. 142; Savings Bank v. Des Moines (Iowa) 101 N. W. 867. The Iowa Supreme Court, in the cases cited, relied upon the following by the Supreme Court of the United States: Van Allen v. Assessors, 3 Wall. 573, 18 L. Ed. 229; National Bank v. Kentucky, 9 Wall. 358, 19 L. Ed. 701; Farrington v. Tennessee, 95 U. S. 686, 24 L. Ed. 558; Palmer v. McMahon, 133 U. S. 666, 10 Sup. Ct. 324, 33 L. Ed. 772. But under the second question above recited, it will be observed that in all four of the Iowa cases cited the Iowa Supreme Court was dealing with cases on appeal from the local equalization board—one of the steps pointed out by statute for the original assessment. As before stated, both the plaintiffs herein are savings banks, created, having their existence, and doing business under Iowa statutes. It is not claimed, and cannot be, that this court is, or should be, controlled by the decisions of the Iowa Supreme Court with reference to a federal question, and particularly the taxation or exemption of United States bonds. The decisions of the federal Supreme Court are alone controlling, however persuasive the opinions of the state Supreme Courts may be. And yet it would be very unfortunate if this court would feel compelled to hold that, under a given state of facts, exemption from taxation should be allowed, while all other parties with taxes less than $2,000—the necessary amount to give jurisdiction to this court— should be compelled to pay taxes upon the same state of facts. And this court should not so hold unless driven to that conclusion by reason of the decisions of the United States Supreme Court. That United States bonds are not taxable is not and has not been disputed since John Marshall wrote the opinion in the case of Mc-Culloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579. It is no longer debated. If the individual has his resources invested in govern-

ment bonds, he cannot be taxed. If the capital stock of these banks were being assessed, deductions could be made of all such bonds. But the capital stock is not being assessed. It cannot be presumed that the assessor did that which he had no authority to do. The shares of stock are what are assessed. The difference between taxing capital stock and the shares of stock may or may not be easily discernible. But that there is a difference one need only go to the decisions of the United States Supreme Court. And recognizing such difference it has been held that a corporation can be taxed in several ways if there are statutes allowing it: (1) Its accumulated earnings; (2) profits and dividends; (3) its real estate; (4) its franchise; (5) its capital stock; (6) its shares of stock. That a statute allowing all these would be oppressive and unfair does not meet the question as to the power. In Iowa, in case of a state savings bank, it is the shares of stock that are assessed. And·the value of the shares is made up of the assets; and the fact that one of the assets is government bonds does not change the situation, and does not give it the right of an exemption. So that I conclude that under the Iowa statute and under the federal cases hereinbefore cited it was the shares of stock that were assessed, and from such shares of stock the bank could not deduct its United States bonds. And I agree with the Iowa Supreme Court in its four times announced conclusion.

2. The bank was assessed on the supposed value of the shares of stock. The assessor made his returns to the county auditor. There was no review, as might have been, by the local board of equalization; and that board having taken no action, of course there was no review by the state district court. The auditor made up the taxbooks, and annexed thereto his warrant directing the county treasurer to make the collections on 25 per cent. of the assessors' assessment, multiplied by the tax levy. And this the treasurer did, and gave his receipts therefor. In making the assessments there was no fraud practiced upon the assessor. The assessor was acquainted with all the facts. The assessor furnished the forms on which the bank should make its reports. All the facts were truthfully disclosed on the verified statement by the cashier of the bank, which the assessor carried to the auditor's office. The cashier called attention to the asset of the government bonds, and claimed the exemption. The assessor, through a mistake of law, conceded the claim. Now, can the treasurer, acting in the capacity of an assessor, correct the mistake? That the assessor, in part at least, acts judicially, there can be no doubt. He administers an oath to the bank officer. He takes his evidence. He considers such other facts as come to his notice. He calls for and examines the assets. He inspects the books. He gets, or tries to get, all desired information. And after hearing the testimony, and seeing all the evidence, he makes his findings and adopts his conclusions. Surely that is a judicial act. And if that is so, then how can it be impeached, excepting for fraud, or by the statutory mode of review by the local equalization board, and then by appeal to the state court? The whole method of taxation, so far as now

considered, aside from the question of the government bonds, is regulated, directed, and controlled by the Iowa statutes. The county treasurer can perform the duties only as allowed by the state statutes. And under the rule of general recognition the construction given those statutes by the Supreme Court of the state will be and must be observed by this court. But before noticing what the Iowa Supreme Court has said and has held I deem it proper to say that as an original question I would hold that, when neither the assessor nor the property owner is guilty of a fraud, when the assessor has seen the property, or considered, or had the opportunity to consider, the assets, bills receivable, and choses in action, and has made his assessments, and there is no review by the local board, such assessment is a finality. The assessor assesses a house or stock of merchandise at $5,000. In fact it is worth $7,500. But the assessor saw it. He looked it all over. He acted with an honest purpose. The owner concealed nothing. All that can be said is that he erred in his conclusions. Or, suppose he knew it was worth $7,500, but that the $5,000 was proportionately as high as all his other assessments. And suppose there is no review by the local board, and, of course, no appeal to the state court. It cannot possibly be said, in my judgment, that a county treasurer, on the motion of a tax ferret five years thereafter can reassess the property, and again collect the taxes. If this is not so, then the harvest for the tax ferrets is more abundant than the most ardent champion of the law ever hoped for. Half the homes and half the farms, and nearly all the stocks of goods in Iowa, can again be assessed, and a second time, for the same year, subjected to taxation. And in principle there is no sort of difference between a home, or farm, or stock of goods, and either a bank or the shares of stock of a bank. In the case at bar the bank did not escape the attention of the assessor. The bank was not withheld. It was not overlooked. And, whether this is sound or not, the Iowa Supreme Court has said that it is, and that ends the discussion. In Galusha v. Wendt, 114 Iowa, 597–611, 87 N. W. 512, 517, Judge McClain said:

"There is some authority for the position that in case of gross undervaluation the state may reassess the property and collect taxes on the real value thereof; the right to do so being put on the ground that such gross undervaluation constitutes or shows fraud on the part of the officer. * * * On no question is there opportunity for so great diversity of honest judgment as on the question of value. When the property owner has once honestly returned his property for assessment, and been assessed on such property, he should not be reassessed for the same year on the property merely because another officer may think the first assessment was inadequate."

While what was said by Judge McClain was dictum only, yet I am fully persuaded he correctly stated the rule. Of course, if the value fixed by the assessor is so grossly inadequate as to evidence fraud on the part of the officer, then there can be a reassessment. And this was so held in State v. Weyerhauser (Minn.) 71 N. W. 265. And same case in 176 U. S. 550, 20 Sup. Ct. 485, 44 L. Ed. 583. But in the case at bar the evidence does not show fraud. The assessor did his work honestly, although, in my judgment, he was

mistaken in deducting from the value of the shares of stock the value of the United States bonds. And the same is true of the bank officers. There was no fraud practiced by the cashier. He exhibited the true situation of his bank. He recited under oath that he for the bank held the bonds. The whole case is this: The shares of stock were not correctly valued. But the mistake was one of law. The taxes have been paid on the shares of stock, and, there being no fraud, they should not again be assessed. And, as it seems to me, there is no doubt but that this proposition was squarely so ruled by the Iowa Supreme Court in the case of Bank of Manning v. Trowbridge County Treasurer in July of last year, as reported in 100 N. W. 333. Also, see a discussion of this question in Bank v. Lander County Treasurer (C. C.) 109 Fed. 21.

3. It is said that a court of equity cannot give relief. To this there are two complete answers. The one is that, if the assessment is made, it would be an apparent lien and cloud on the title to the real estate owned by the bank. The other is that a state legislature cannot, by giving a procedure, oust a federal court of its equity jurisdiction. Both principles are so well recognized that a discussion thereof would be academic.

4. The jurisdiction of this court attaches because of the federal question, viz., should the reduction from the value of the shares of stock be made because of the United States bonds? That question, regardless of the citizenship of the parties, gave this court power to take the case and adjudicate the matters in controversy. And the fact that this court has adjudicated the federal question adversely to the bank does not deprive the court of jurisdiction over the other question. The rule is correctly stated in the decision of Judge Brewer in the case of Street Railway Company v. Cable Company (C. C.) 32 Fed. 727.

There will be a decree for the plaintiffs.